## T. L. MOTLEY *v.* J. AMORY HEAD.

*Guardianship. Insanity. Agency. Evidence. Competency of Witness. Husband & Wife.*

Where a person loses power to bind himself by his own acts, it is true as a general principle that that works a like loss in all those upon whom he has conferred the power to bind him. But being put under guardianship for insanity would not warrant the court to hold that that terminated an agency previously created by him, it not appearing that the insanity was of that character which disqualified a person from entering into a valid contract.

The defendant resides in Windsor, Vermont, and having an uncontrollable appetite for liquor, left his wife in charge of his business at home and went to an asylum for treatment in Massachusetts and was there put under guardianship for insanity. *Held* that the county court properly refused to charge that the guardianship put an end to the agency of the wife in the absence of any proof of the character of the insanity.

Ordinarily objection to the competency of a witness should be taken before the testimony is closed, and in this case, where the deposition of the defendant's wife was objected to for substance only, it was *held* that the question of her competency as a witness could not be raised after the testimony was closed.

The question of the wife's authority, in view of all the facts in this case, was properly submitted to the jury.

GENERAL ASSUMPSIT, with specification. Plea non assumpsit and offset. Trial by jury, May term, 1870, BARRETT, J., presiding.

The plaintiff gave evidence tending to show that the defendant's wife owned a farm in Windsor, on which she, with her husband

and family, had been living several years, and which he had carried on, and on which were the customary stock and farming tools belonging to the defendant; that early in January, 1868, the defendant, on account of dissipation, went to the asylum for such folks at Northampton, Mass., and remained there till April, 1869, and then went back to said farm to live; that during his absence at Northampton his wife was entrusted with the care and management of the farm, and all his business affairs at Windsor, she residing on the farm during that time; that on her husband thus going to Northampton, she procured the plaintiff, who is a family relative, and was then resident of Boston, Mass., to go to Windsor and aid her in carrying on the farm and attending to the business and affairs of her husband during his absence; that plaintiff went, and remained at Windsor under said procurement until the defendant's return home in April, 1869, at which time the plaintiff left; that the items of said specification were for money of the plaintiff paid out by him, at the request and by the direction of defendant's wife, in and about carrying on the farm and the affairs and business of the defendant that were entrusted to his wife during his absence, and including some debts owing by the defendant, incurred in Windsor in and about his farming operations, and supporting himself and family before he went to Northampton; that plaintiff accompanied defendant when he went to Northampton, as aforesaid, and defendant approved of plaintiff's going to Windsor to aid his wife. The plaintiff on cross examination testified that early in June, shortly before he brought this suit, he told the defendant that he had an account against him, but he did not present it, because the defendant said he would never pay it. As a part of the evidence tending to show the aforesaid facts, and after other evidence had been given, tending to show that defendant's wife was his agent in the matter aforesaid, the plaintiff offered the deposition of said wife, which was admitted and read, subject to objection for substance, but what the objection was, or for what reason was not stated, till defendant presented written requests for a charge on that subject, nor was exception taken till after the charge was given.

The plaintiff then rested.

The defendant introduced counter evidence as to the agency of his wife, and as to the matters embraced in plaintiff's specification, tending to show that the plaintiff was not entitled to recover for them of defendant, and also evidence in support of his plea in offset. He also gave in evidence, subject to objection for substance, a copy of record of the probate court of Suffolk county, Mass., of the appointment of a citizen of that state guardian of the defendant, on the 10th day of February, 1868.

Plaintiff's testimony on cross-examination showed that he was knowing of such appointment soon after it was made, but that he understood that it did not affect property and business of defendant in Vermont.

Defendant requested the court to charge :

1st. That Mrs. Head's testimony cannot be received in order to show that she was made agent of her husband.

2d. That if she was agent for the purpose of carrying on the farming, and that fact was known to Motley, that did not authorize any such employment as the advance of money by Motley as is claimed in this case.

3d. The fact that the defendant was under guardianship, and that known to the plaintiff, puts an end to any agency which had been created by him before that time, as far as the plaintiff is concerned.

4th. That the plaintiff must have demanded an accounting before this suit can be sustained.

5th. That there was no agency that authorized Mrs. Head or Mr. Motley to pay any debts that had been contracted before defendant went away.

The court charged the jury that plaintiff's right of recovery depended on the question :

1st. Whether in point of fact the defendant's wife was his authorized agent during his absence in reference to the business and matters about which the plaintiff claims he paid the money, and

2d. Whether he thus paid that money by the procurement of the defendant's wife in the exercise of her said agency; that the question of agency was to be determined by them as one of fact upon the evidence, and not to be implied as matter of law from the relation of husband and wife; that if they should find such agency in fact, and that the plaintiff was employed and procured by her in the exercise of such agency to aid her, and make pay-

ments of his own money as claimed, and his evidence tended to show, he would be entitled to recover for such payments as were made in matters falling within the scope of such agency of the wife, and by her procurement as such agent, and for nothing outside of that.

The court explained to the jury the subject of said agency so as to enable them intelligently to appreciate and determine its character and scope in view of the evidence before them.

So far as the part of the charge above given does not comply with the defendant's requests, the court did not comply with them, to which, and the charge as above stated, the defendant excepted. In other respects the charge was such as the case called for.

Verdict for plaintiff.

*James N. Edminster*, for the defendant.

*John F. Deane*, for the plaintiff.

The opinion of the court was delivered by

Ross, J. The first question raised is in respect to the admissibility of the deposition of the defendant's wife. The plaintiff offered her deposition, "which was admitted and read, subject to objection for *substance*, but what the objection was, or for what reason, was not stated till the defendant presented written requests for a charge on that subject, nor was exception taken till after the charge was given." The defendant requested the court to charge " that Mrs. Head's testimony cannot be received in order to show that she was made the agent of her husband." The substance of the deposition, so far as it relates to the creation of the agency of the wife, was relevant to the issue. The deposition contains nothing in substance that is irrelevant or immaterial. The request relates to the competency of the wife to testify in regard to the creation of the agency. No objection was made to the admission of the deposition for that reason. The exceptions do not raise the question of the competency of the wife to testify in regard to the creation of her agency, and we do not decide whether she is a competent witness for that purpose. It would be unjust to the plaintiff to allow the defendant, after the testimony

is closed, and the court ready to charge the jury, to raise the question of the competency of a witness to testify on any given point in the case, when he had placed his objection on some other ground at the time the testimony was introduced. If the defendant had placed his objection upon the ground of incompetency, the plaintiff might have availed himself of other testimony on that point.

Whether the defendant was entitled to a charge in compliance with his 2d and 5th requests, depended upon the testimony in the case. The wife may as well be the agent of the husband for the payment of debts, or for borrowing money to be used in the business entrusted to her care, as for any other purpose. The plaintiff's evidence tended to show that the defendant entrusted to his wife the care and management of the farm and of all his business affairs at Windsor, and that the plaintiff made all the advances at the wife's request and under her direction in carrying on the farm; that the plaintiff went to Windsor to assist the wife in this business with the knowledge and · approval of the defendant. The court submitted to the jury, with very full instructions, to be found as facts from the evidence in the case, the agency, its scope, and whether the money sought to be recovered was paid for the defendant by the plaintiff by the procurement of the wife acting within the scope of her agency. These were all facts to be determined by the jury from the evidence in the case. The court explained to the jury the subject of the agency so as to enable them intelligently to appreciate and determine its character and scope. This was all the defendant had a right to demand. If the jury under such instructions have found the facts against the defendant, this court cannot afford him any relief. In the cases cited by the defendant's counsel from 7 M. & W., 596, and 2 Man. & Gran., 721, the agent exceeded the scope of his authority, and there was an attempt to justify his acts because an unexpected turn in the business required, as the agent thought, that certain acts should be performed before he could communicate with his principal. No such question arises in this case. We think the instruction given the jury required them to find that the defendant had given the wife authority to procure the money of the plaintiff for the

purposes for which it was used.  The wife, acting under such authority, as effectually bound the defendant, by her acts, to the payment of the money, as though the defendant had procured the money himself.

The defendant also requested the court to charge :   3d.   " The fact that the defendant was under guardianship, and that known to the plaintiff, puts an end to any agency which had been created by him before that time, as far as the plaintiff is concerned."   The court did not comply with this request.   The plaintiff's testimony tended to show that " early in January, 1868, the defendant, on account of dissipation, went to the asylum for such folks at Northampton, Mass., and remained there till April, 1869, and that the plaintiff accompanied him when he went to Northampton."   The defendant introduced exemplified copies of the proceedings of the probate court for the county of Suffolk and state of Massachusetts, by which it appears that Feb. 10, 1868, while the defendant was in the asylum, that court, on the application of the defendant's friends, appointed a guardian over the defendant as an insane person.   The defendant claims this adjudication is conclusive evidence that the defendant was insane, and that insanity, so long as it continues, is the legal death of a person so far as relates to the power of that person to bind himself by contract, and, like natural death, puts an end to all agencies before that time created by him.   An agent always acts in the name of the principal. Agency presupposes the presence of the principal in the person of, and acting through, the agent.   The power that binds is not that of the agent, but the power of the principal acting through the agent.   When a person loses the power to bind himself, by his own acts, it is true, as a general principle, that that loss works a like loss in all those upon whom he has conferred the power to bind him.   The plaintiff insists that, inasmuch as the defendant, at the time, was a resident of Windsor this state, and stated so to be, in the application for the appointment of a guardian, and as all the property appraised and passed into the hands of the guardian was personal property of that character which follows and has the situs of the owner, the probate court in Massachusetts had no jurisdiction, either of the person or of the property of

Motley v. Head.

the defendant, and that the adjudication of the insanity of the defendant by that court is of no binding effect. The question of jurisdiction, in such cases, is a question whose solution is attended with no inconsiderable difficulty. We have not investigated it and do not deem it necessary to decide it, as we are of the opinion that from an adjudication that a person is insane it does not follow that the insanity is necessarily of that character which disqualifies that person from entering into a valid contract. Insanity is of almost every conceivable kind and type, from that which attaches itself to the mind when considering some particular subject, and at no other time, to that which drives the person headlong to self-destruction. From the adjudication we are unable to determine with which one of these various types of insanity the defendant was afflicted. The plaintiff's testimony informs us that it was an 'uncontrollable' appetite for intoxicating drinks, and he was sacrificing his property for the gratification of this appetite. It was necessary to take from him, for the time being, the control of his personal property, to enable him to regain control over his appetite. Because he was overmastered by a depraved appetite, it does not follow that his faculties of mind and his judgment were so far impaired that he was incapable of making a valid contract. The property about which the agency was exercised was not that which was given into the custody of the guardian. To have entitled the defendant to the instruction requested, he should have accompanied the adjudication of insanity with evidence showing that the insanity was of that character that disqualified the defendant from making a valid contract. This disposes of all the questions relied upon by the defendant.

Judgment affirmed.