## BLAISDELL v. HOLMES.

### Guardianship. Contract.

Defendant, being under guardianship as an *insane* person, on account of some mismanagement of his property, hired plaintiff to do his housework, and she did it accordingly for a year. Defendant managed his farm, property, and household affairs in his own way, without interference on the part of his guardian. Soon after plaintiff commenced work, the guardian told her to stay, and he would see her paid. After the guardian's death, plaintiff brought suit for her labor, and *held* that defendant was liable therefor.

BOOK ACCOUNT. The auditor made the following report:

The plaintiff presented her account, and the defendant claimed certain items of account in offset. I allow the plaintiff's account as charged, being $35.99, and I allow to the defendant the amount paid by him to a Miss Waterman for the plaintiff, being $4.40, and interest, 80 cents, making $5.20, which deducted from the plaintiff's account, leaves a balance of $30.79, which I find as the amount due the plaintiff from the defendant to balance book accounts between them, subject to the opinion of the court upon the following statement of facts: The defendant is a farmer, an

unmarried man, owning a farm in Royalton on which he lived with his mother until July, 1870, at which time his mother died. In November, 1870, he applied to the plaintiff and contracted with her to keep house and work for him one year at $1.50 per week and the board of her child, a boy about two years old.    The plaintiff did keep house and faithfully work for the defendant one year from Nov. 1870, under said contract.    During the year the defendant paid the plaintiff some small sums of money, let her have some clothing which was his mother's, and purchased some articles for her, or gave her orders on stores, towards her wages. From time to time and several times during the year, they looked over to see how their accounts stood, both parties keeping memoranda of their accounts, and agreed on the balance due the plaintiff at these times, and at the end of the year they thus looked over and found the balance then due the plaintiff to be $35.32.

I further find that for some reason growing out of the defendant's management of his property, John Robinson was appointed his guardian by the Probate Court on the 8th of September, 1870, and remained such guardian until his death, June 11, 1873. Since then he has had no guardian.    It appeared by the probate records that said guardian was appointed over the defendant as an "*insane*" person.    It appeared in evidence, and I find, that the defendant managed his farm and property and household affairs in his own way without interference on the part of his guardian. At one time not long after the plaintiff commenced work for the defendant, she told said Robinson that she did not like to stay there, and he told her to stay and he would see her paid, as testified to by the plaintiff without objection by the defendant; but said Robinson never did pay her, and there was no testimony that she ever called on him for pay.    I find that plaintiff's services were reasonably worth the price agreed to be paid by defendant. This suit was commenced July 15, 1873, and personal property attached on the writ, as appears by the return of the officer thereon.

If from the foregoing facts the court are of the opinion that the plaintiff is not entitled to recover in this action, I find for the defendant to recover his costs.

Judgment for plaintiff and exceptions by defendant, December Term, 1874, BARRETT, J., presiding.

*D. C. Denison & Son*, for defendant.

The report shows that the defendant undertook to contract with the plaintiff while defendant was under guardianship.    It also

shows that the plaintiff closed the contract with the guardian. It appeared also that the defendant was an insane person, and under guardianship for that reason.

As to insane persons, their " responsibilities are blotted out." They cannot make contracts even for necessaries while under guardianship. The guardian cannot empower his insane ward to make a contract that shall bind the ward. Possibly he could empower him to bind the guardian. Schoul. Dom. Rel. 504.

The guardian is bound by this contract. Plaintiff's remedy is against the guardian. Schoul. Dom. Rel. 464; *Hatch* v. *Hatch*, 19 Vt. 437.

*Lamb & Tarbell*, for plaintiff.

Upon the finding of the auditor, the judgment of the County Court is essentially just. In a suit brought after the death of the guardian, against a former ward, the plaintiff is entitled to recover of the person discharged of his guardianship, upon a *quantum meruit*, if not upon a contract made during the continuance of the guardianship. *Aldrich* v. *Williams*, 12 Vt. 413; *Aldrich* v. *Williams*, 13 Vt. 373; *Probate Court* v. *Wells et als.*, Rutland Co., 1823, Mss. of S. H. Hodges, cited in 1 Washb. Dig. 440; 3 Mass. 300; Gen. Sts. 484, s. 47; Schoul. Dom. Rel. 426.

From the statement of facts and evidence by the auditor, it is presumed the County Court found such facts as were necessary to uphold their judgment; the fact that the labor of the plaintiff should be classed among *necessaries ;* the fact that defendant was not put under guardianship for any cause which rendered him incapable of making a valid contract; and the fact that the guardian had ratified the contract of his ward; and the finding of the County Court herein, if the facts found by the auditor are sufficient to warrant such judgment, or even an inference, will not be disturbed in this court. *Stone et als.* v. *Foster*, 16 Vt. 546; *Birchard & Moulton* v. *Palmer*, 18 Vt. 203; *Barber* v. *Britton & Hall*, 26 Vt. 112.

In order to reverse the judgment of the County Court, it must appear affirmatively from the report, that the insanity for which the guardianship was instituted, was of that character that dis-

qualified the defendant to make a valid contract. The appointment of a guardian is not conclusive. *Shumway* v. *Shumway*, 2 Vt. 339; *Robinson's Exr.* v. *Robinson's Estate*, 39 Vt. 267; *Motley* v. *Head*, 43 Vt. 633. The fact that the guardian directed plaintiff to keep at work, does not alter the contract made by defendant, but does show that the guardian had knowledge of the contract, did not dissent therefrom, and ratified it.

The opinion of the court was delivered by

REDFIELD, J. The auditor reports that there is due the plaintiff $30.79 for faithful personal services for the year ending Nov. 1871, in doing defendant's housework on his farm in Royalton. The probate records show that John Robinson was appointed guardian of the defendant as an *insane* person, on the 8th of September, 1870, and was in no way discharged until his death, June 11, 1873. But the report states that the defendant during this time managed his affairs, farm, property, and household affairs, in his own way, without interference on the part of his guardian. The defendant hired the plaintiff, received the benefit of her services, and *should* pay for them as he agreed, unless there is some stringent rule of law that would defeat the plaintiff's recovery, and thus work great injustice; and every reasonable intendment should be made to uphold the judgment of the County Court.

The statement of facts in the report, and the fair inference to be drawn from them, would warrant the court in finding that the " insanity " which the Probate Court found as the ground of appointing a guardian of the defendant, was temporary, and did not subsist at the time of the contract of hiring and rendering of the services. The statute provides that the words " insane person," shall include every " idiot, *non compos*, lunatic, or distracted person." Whatever was the defendant's infirmity, he was acting *sui juris*, and conducting the business of his farm and household affairs like other citizens, with the knowledge and consent of the guardian. He bought, supplied, and sold, without let or hindrance. The guardian knew that plaintiff was laboring under a contract of hire with the defendant, and expressly told her, in substance, that her contract was good, and that defendant would

pay for her services. The adjudication of the Probate Court, that defendant was at the time a proper subject of guardianship, is, no doubt, conclusive. And that condition of the ward is, ordinarily, presumed to continue. But when it affirmatively appears that the ward has recovered from his infirmity, and is in the possession of a sound mind, and is conducting business in his own right and name, like other citizens, and the guardian sees him buy and sell, hire and pay, without notice or interference, we see no good reason or rule of law that should shield him, more than other men, from the common liability to pay his hired help. Judge REDFIELD says, 3 Law of Wills, 458 : " In cases of persons of unsound mind, the guardianship will, practically, terminate with the recovery by the ward of his sound mind and disposing capacity." In *Robinson's Exr.* v. *Robinson*, 39 Vt. 267, the court held that the fact that the testator was, at the time of the execution of the will, under guardianship, is not conclusive of his competency to make his will ; and the court, BARRETT, J., says : " It is well known that often a guardian is appointed on account of some derangement that proves to be temporary, and passes off, leaving the party sound as ever. * * It would seem peculiarly incongruous and hard, that in either case, a will made by such persons, thus become sane, should be held invalid merely by force of the record of the Probate Court." In *Motley* v. *Head*, 43 Vt. 639, the court, ROSS, J., say : " We are of opinion that from an adjudication that a person is insane, it does not follow that the insanity is necessarily of that character which disqualifies that person from entering into a valid contract."

A person in *delirium tremens* is a " distracted person," and subject to guardianship ; but when rum is dispelled and reason returns, the necessity for guardianship ceases, and the capacity to make a valid will or contract is restored.

We think, in view of the facts disclosed in this case, the defendant should pay this woman, who faithfully kept his house and cooked his food, and that there is and should be no law against it.

Judgment affirmed.