## HEMAN STANNARD *v.* MICHAEL BURNS' ADMR.

*Insane person.     Contract for necessaries.*

An adjudication of insanity and the appointment of a guardian by the Probate Court is not conclusive against the ability of the ward to make a valid contract for necessaries.

This was an appeal from an order of the Probate Court for the district of Fair Haven, accepting the report of commissioners, by which the claim of the plaintiff against the estate of Michael Burns was disallowed. Trial by court at the September term, 1890, Taft, J., presiding.

Judgment for the plaintiff in the sum of $102.64. The defendant excepts.

The plaintiff claimed to recover upon an account consisting of fourteen items, of which the following is a copy :

1887.

| | | | | |
|---|---|---|---|---|
| 1. | Dec. 27, | Michael Burns, to one day at Rutland | $ 2 | 00 |
| 2. | | Car fare and hotel | | 75 |

1888.

| | | | | |
|---|---|---|---|---|
| 3. | Feb. 7, | Do | 2 | 75 |
| 4. | June 5, | Do | 2 | 75 |
| 5. | 8, | Cash | 40 | 00 |
| 6. | Aug. 15, | " | 10 | 00 |
| 7. | Oct. 1, | " | 30 | 00 |
| 8 | | One day | 2 | 00 |
| 9 | | Hotel, car fare | 1 | 40 |

1889.

| | | | | |
|---|---|---|---|---|
| 10. | Mar. 19, | Cash | 5 | 00 |
| 11. | Apr. 8, | " | 10 | 00 |
| 12. | Jun. 18, | " | 25 | 00 |
| 13 | | One day, car fare | 3 | 15 |
| 14. | July 15, | Cash after death | 5 | 00 |

$139 80

Item 14 was disallowed as having accrued after the death of the intestate, Burns. With reference to the other items the court found :

"The testate Michael Burns was adjudged an insane person and a guardian appointed over him February 11, 1888, by the Probate Court for the district of Fair Haven.

"At the time items Nos. 1, 2, 3, 4 and 5 were contracted, the claimant had no knowledge that Burns had been adjudged insane, and a guardian appointed, but he had such knowledge when items Nos. 6 to 13 inclusive accrued. During the time covered by the account, Burns was a feeble, insane, old man, living in his own house, cared for by Bridget Manghan. Both Burns and Bridget were not on friendly terms with the guardian, and when the latter applied to Bridget to learn if anything was needed for Burns, he was told that Burns was not in want and did not at the time know of the loans by the claimant to Burns until the latter's death. Had Bridget made known to the guardian the wants or needs of Burns, they would have been supplied by the guardian.

"The services were rendered and cash paid as charged in the account.

The first items, Nos. 1, 2, 3, 4 and 5 of $48.25 with interest from 8th June, 1888, to date, amount to $55.06. Items 6 to 13 inclusive, $86.55, with interest from the date of the last item, 18 June, 1889, to date, amount to $93.41.

"Michael Burns died 14 July, 1889. The money specified in items 5, 6, 7, 10, 11 and 12, was used by Bridget Manghan in the support of, and necessaries for, the testate.

After the first nine items had accrued, the claimant presented his account to the guardian and he promised to pay the items of the date prior to the appointment of the guardian, and told the claimant he would not pay the items charged during the guardianship. The items then accrued ($91.65), with interest from that date, Oct. 13, 1888, to date, amount to the sum of $102.64."

*W. H. Preston* and *J. C. Baker*, for the defendant.

The contracts of persons adjudged to be insane are absolutely void, and all persons are presumed to know of the adjudication.

R. L. s. 2443 ; 1 Add. Con. 231, note 1, prin. 3; *Crouse* v. *Halman*, 39 Ind. 30; *Jackson* v. *Gumoer*, 2 Cow. 522.

*Geo. E. Lawrence* and *F. S. Platt*, for the plaintiff.

A contract with an insane person made in good faith for necessaries is enforceable.

*Baxter* v. *Earl of Portsmouth*, 5 B. & C. 170 ; 1 Par. Con. 387 ; *McCrillis* v. *Bartlett*, 8 N. H. 569 ; *Barnes* v. *Hathaway*, 66 Barb. 452 ; *Shaper* v. *Wing*, 2 Hun. 671 ; *Lincoln* v. *Buckmaster*, 32 Vt. 660.

The opinion of the court was delivered by

START, J.   It appears from the statement of facts filed in the County Court, that Michael Burns was adjudged an insane person, and a guardian appointed over him in February, 1888 ; that Burns lived in his own home and was cared for by Bridget Manghan; that, while Burns was under guardianship, the plaintiff rendered services for him and from time to time loaned him money, and the same was used by Bridget Manghan in the purchase of necessaries for his support.

The statement of facts, and the fair inferences to be drawn from them, would warrant the court in finding that the "insanity" which the Probate Court found as a ground for appointing a guardian was not of that character which disqualified the ward from entering into a valid contract for necessaries.

It does not necessarily follow, when there has been an adjudication by the Probate Court that a person is insane, that the insanity is of that character which disqualifies him from making a valid contract for necessaries. *Motley* v. *Head*, 43 Vt. 633 ; *Blaisdell* v. *Holmes*, 48 Vt. 492. In the last named case the plaintiff was permitted to recover of the defendant for services rendered for him under a contract made with him, after he had been adjudged an insane person by the Probate Court, and while he was under guardianship.

Stannard *v.* Burns' Admr.

In *Motley* v. *Head, supra,* the plaintiff sought to recover for money paid out for the defendant, after he was adjudged an insane person, and while he was under guardianship. The adjudication of insanity was relied upon in defence, and the court held that the adjudication, to be available, should have been accompanied with evidence showing that the insanity was of that character which disqualified the defendant from making a valid contract.

*Judgment affirmed, and cause certified to the Probate Court.*

Thompson, J., dissents.

Dissenting opinion by

THOMPSON, J. The majority of the court affirm the judgment below, on the ground that the items of plaintiff's account were necessaries, furnished by him to defendant's testate, under such circumstances as to entitle plaintiff to recover therefor. I am unable to concur in this opinion and decision.

It was conceded on hearing that judgment was rendered in the County Court for the plaintiff to recover $102.64, although this fact does not appear from the exceptions. The trial in the County Court was by the court who filed a statement of these facts signed by the judges, and this court is confined to a consideration of the facts thus found. Laws of 1888, No. 56, s. 1. The County Court found that the first nine items of plaintiff's account with interest from October 13, 1888, to date of judgment, amounted to $102.64, the amount for which judgment below was rendered; that said nine items are as follows:

1887.
(1) Dec. 27, Michael Burns, to one day at Rutland....$  2  00
(2)              Car fare and hotel.......  ............   75
    1888.
(3) Feb.   7, Do........  .....................   2  75
(4) June  5, Do....................................   2  75
(5)       8, Cash................................. 40  00

Stannard *v.* Burns' Admr.

| | | | | | |
|---|---|---|---|---|---|
| (6) | Aug. 15, | " | .............................. | $10 | 00 |
| (7) | Oct. 1, | " | .............................. | 30 | 00 |
| (8) | | | One day.............................. | 2 | 00 |
| (9) | | | Hotel, car fare.............................. | 1 | 40 |

That the plaintiff's testate, Michael Burns, was adjudged to be an insane person, Feb. 7, 1888, and a guardian appointed over him Feb. 11, 1888, by the Probate Court for the district in which he then resided, and that the guardian duly accepted the appointment; that at the time items Nos. 1, 2, 3, 4 and 5 were contracted, the plaintiff had no knowledge that Burns had been adjudged insane and a guardian appointed, but he had such knowledge when items Nos. 6 to 9 inclusive accrued; that during the time covered by the account, Burns was a feeble, insane old man, living in his own house, cared for by Bridget Manghan; that both Burns and Bridget were not on friendly terms with the guardian, and when the latter applied to Bridget to learn if anything was needed for Burns, he was told that Burns was not in want, and did not at the time know of the loans by the claimant to Burns until the latter's death; that had Bridget made known to the guardian the wants or needs of Burns, they would have been supplied by the guardian; that the services were rendered and cash paid as charged in the account; that "the money specified in items Nos. 5, 6 and 7 was used by Bridget Manghan in the support of, and necessaries for, the testate;" that Burns died July 14, 1889; that after the first nine items had accrued, the claimant presented his account to the guardian and he promised to pay the items of a date prior to the appointment of the guardian, but told the plaintiff he would not pay the items charged during the guardianship.

As the plaintiff did not except to the disallowance of items Nos. 10 to 14 inclusive of his account by the court below, it is unnecessary to consider them. No facts except as above stated were found bearing upon the question whether Burns was in need of necessaries or in regard to whether the items of plaintiff's

account were in fact necessaries for Burns at the time they accrued.

An insane person, whether under guardianship or not may be bound by his contract for necessaries, if made in good faith by the other party and under circumstances which justify the contract. 1 Par. Cont. 387; Chit. Con. (10 Am. Ed. by Perkins) 150; *Seaver* v. *Phelps*, 11 Pick. 304; *McCrillis* v. *Bartlett*, 8 N. H. 569; *Sawyer* v. *Lufkin*, 56 Me. 308. The liability of an insane person, and of an infant, for necessaries, stand on the same footing, and are governed by the same rules of law. Metcalf Con. 79; *Thompson* v. *Leach*, 3 Mod. 310; 2 Greenl. Ev. s. 369; *Seaver* v. *Phelps, supra*; *Lincoln* v. *Buckmaster*, 32 Vt. 652, which cites with approval *Seaver* v. *Phelps, supra*; *Sawyer* v. *Lufkin, supra*.

The law allowing infants and lunatics to bind themselves by their contracts for necessaries, is solely for their benefit, and intended as a shield, not as a sword to their hurt.

It is well settled that it is a question of law whether the articles furnished to an infant are of the name and quality coming within the term necessaries, and a question for the jury to determine to what extent the articles of that denomination were necessary to the particular case. In *Thrall* v. *Wright*, 38 Vt. 494, which was an action to recover for alleged necessaries furnished defendant, a minor, it was held that although the articles sued for are in the class denominated necessaries, yet the burden of proof rests on the plaintiff to show affirmatively that they were in fact necessary for the infant when furnished. Reeve's Dom. Rel. Nos. 227, 228; *Bainbridge* v. *Pickering*, 2 Wm. Black 1325; Ewell's Lead. Cas. on Inf. Cov. & Id. 62, 63. In *Johnson* v. *Lines*, 6 Watts & Serg. 80, 40 Am. Dec. 542, which was an action to recover for alleged necessaries furnished defendant, a minor, and under guardianship, the court say: "The rule of law is that no one may deal with a minor; the exception to it is, that a stranger may supply him with necessaries proper

for him, in default of supply by any one else; but his interference with what is properly the guardian's business must rest on an actual necessity, of which he must judge, in a measure at his peril." *Klyne* v. *L'Amoureaux*, 2 Paige. Ch. 419; 22 Am. Dec. 652; *Pearl* v. *McDowell*, 3 Marsh. (J. J.) 658; (S. C. 20 Am. Dec. 199.)

Reason and a sound public policy require that a plaintiff seeking to recover for alleged necessaries furnished an insane person should be held to the same measure and rule of proof as above laid down in the case of an infant, especially where the insane person is under guardianship. To hold otherwise, would make the appointment of guardians to an insane person under our statute, practically of no effect, and turn the insane ward over to the care of any person who might interfere in his behalf, without regard to how the guardian looks after or supplies the wants of his ward. In *Lincoln* v. *Buckmaster*, *supra*, the lunatic was not under guardianship. In that case the court said : "This right to supply necessaries to lunatics will not justify any one in crediting them with what otherwise might be necessaries so long as they are rightfully under the care and control of family friends, on the ground that they are not properly supported, any more than one can so interfere in the mode of clothing and educating infants, while under the care of their natural or legal guardians. All the cases hold this." This reasoning applies with far greater force in a case like the one at bar where the lunatic is under guardianship, and where the guardian is seeking to learn the wants of his ward and is ready and willing to supply them. The case shows no occasion for the interference of a stranger.

Burns was a "feeble, insane, old man," during the entire time covered by plaintiff's account. The court below failed to find that Burns was in want or that any necessity existed which made any of the items charged necessaries at the time they accrued. There is nothing which tends to show that any of the

items fall within the class denominated necessaries or that any of them excepting Nos. 5, 6 and 7 were in any way, directly or indirectly, beneficial to Burns, to show for what purpose the plaintiff expended time and incurred car fare and hotel bills. The plaintiff must have known Burns' mental condition. He had constructive notice of the appointment of a guardian at the time it was made, and actual knowledge after the first five items of his account accrued, yet he took no measures at any time to consult with the guardian until he presented his account to him for payment.

It is to be presumed that the County Court found and reported all the facts which the evidence before it warranted it in finding, and it is not for this court in view of the statute requiring the finding of facts to be in writing and signed by the judges, to assume that the County Court found facts not included in such statement which is like and takes the place of a special verdict. This court cannot find or infer facts. Hence, I insist that the plaintiff cannot recover on the ground on which the majority of the court put their decision, for the reason that he has failed to show affirmatively that the various items of his account were necessaries of which Burns stood in need at the time they were furnished him. It may be said that the money specified in items Nos. 5, 6 and 7 was used in the support of and necessaries for Burns, but this does not answer the objection that the plaintiff has failed to prove that Burns was so without means of support at the time the money was furnished as to make it fall within the meaning of the term necessaries, when it was loaned him. If the plaintiff were entitled to recover for the money expended by Bridget Manghan for necessaries, it is incumbent upon him to show the amount so used, and this he has failed to do. But the fact that some of the money was subsequently expended for necessaries cannot avail the plaintiff. Infants and persons *non compos mentis* stand on the same footing as to their liability for necessaries, and also as to what constitute necessaries,

as is shown by the authorities already cited. It is well settled that an infant is not liable in an action at law for money supplied him, to purchase necessaries, although he actually used the money for that purpose. The reason of this is that the contract arises upon the lending, and the law will not support contracts which are to depend for their validity upon a subsequent contingency. In 5 Bac. Abr. (Bouvier's Ed.) Inf. 119, the rule is stated thus: " So, if one lends money to an infant, who actually lays it out in necessaries, yet this shall not bind the infant, nor subject him to an action; for it is upon the lending that the contract must arise, and after that time there could be no contract raised to bind the infant, because after that he might waste the money, and the infant's applying it afterwards for necessaries will not by matter *ex post facto* entitle the plaintiff to an action."

Schouler's Dom. Rel. 555; Tyler Inf. & Cov. 114 s. 70; Chit. Con. (10 Am. Ed. by Perkins) 163; 2 Kent Com. No. 235; *Ellis* v. *Ellis*, 5 Mod. 368; *Darby* v. *Boucher*, 1 Salk. 279; *Earle* v. *Peale*, 1 Salk. 387; *Swift* v. *Bennett*, 10 Cush. 436; *Bradley* v. *Pratt*, 23 Vt. 386.

This would seem to dispose of any claim of the plaintiff to recover on this theory for the money that was expended by Bridget.

Is the plaintiff entitled on any ground to recover for all or any part of his account? The case shows that the Probate Court had jurisdiction of the person and property of Burns at the time it adjudged him to be an insane person, and that this adjudication was made on due notice and hearing. The first three items of plaintiff's account, amounting to $5.50, accrued prior to the adjudication and the appointment of the guardian. As they accrued before the adjudication of insanity, it was incumbent on the defendant to show that the mental condition of Burns at the time these items accrued was such as to render him incapable of contracting. This he has not done. Indeed, the defendant's counsel practically admit plaintiff's right to recover for these

items. *Jackson* v. *King*, 4 Cow. 207, (S. C. 15 Am. Dec. 354 and note.)

The plaintiff cannot recover for the remaining items as they all accrued subsequent to the adjudication of insanity and the appointment of a guardian, it not appearing that they were necessaries. After inquisition and adjudication of insanity, and the appointment of a guardian to an insane person, all his contracts, except for necessaries, are void, while such adjudication and appointment remain in force.

Beverly's case, 4 Coke. 126b,-127a ; 5 Bac. Abr. (Bouvier's Ed.) 28; 15 Am. Dec. 368 note to *Jackson* v. *King ;* Ewell's Lead. Cases on Inf., Cov. & Id. 588 ; *Wait* v. *Maxwell*, 5 Pick. 217 ; *Leonard* v. *Leonard*, 14 Pick. 280 ; *Lynch* v. *Dodge*, 130 Mass. 458 ; *Pearl* v. *McDowell*, 3 J. J. Marsh. 658, ( S. C. 20 Am. Dec. 199); *L'Amoureaux* v. *Crosby*, 2 Paige Ch. 422, (S. C. 22 Am. Dec. 655 and note ;) 1 Greenl. Ev. (12th Ed.) S. 550.

The soundness of this proposition is especially apparent when applied to adjudications under the probate system established by statue in this and many other of our States. It should be kept in mind that an inquisition of lunacy in England and in those states which retain the English system of proceedings in such a case, is very different from the proceedings under the system of Probate Courts, in this and other States. By R. L. ss. 2436, 2437, provision is made for the appointment of guardians by the Probate Court to insane persons and spendthrifts. The words " insane person " include every idiot, *non compos*, lunatic, and distracted person, and the word " spendthrift " includes every person who is liable to be put under guardianship on account of excessive drinking, gaming, idleness or debauchery. R. L. ss. 7, 2435. A spendthrift may be put under guardianship whenever he so spends, wastes or lessens his estate as to expose himself or family to want or suffering, or the town to charge for supporting himself and family. R. L. s. 2437. By statute, guardians of these several classes of unfortunate persons, and of minors, have prac-

tically the same rights and are subject to the same liabilities and duties. There can be no question but what the purpose of the statute providing for the appointment of a guardian over any person fallen within the classes named, is "to secure proper care of his person and of his property; and as to his property, to secure it from being wasted through lack of care, or squandered by improvident contracts." *Robinson's Exr.* v. *Robinson,* 39 Vt. 270. To render this beneficent design of the law effectual, it would seem that there can be no doubt but that the legislature intended all contracts, except for necessaries, to be void, when made by any person falling within either of the classes named, after he has been adjudged an insane person or to be a spendthrift, and a guardian appointed over him by the Probate Court, while such appointment remains in force. This intent is clearly shown by the very full provision for the termination of such guardianship at the instance of the guardian or the ward, provided for by R. L. ss. 2502 to 2510 inclusive. If this was not the purpose of our statute on this subject, for what purpose was it enacted?

*Motley* v. *Head,* 43 Vt. 633 is cited in the opinion of the majority of the court, as holding that an adjudication of insanity relied upon in defence, to be available, must be accompanied with evidence showing that the insanity is of that character which disqualifies the defendant from making a valid contract, and it does in effect so hold. This case seems to be anomalous. There is a line of cases in England and in America in states following the English procedure in making inquisition of lunacy, which hold that such inquisition and office found is only *prima facie* evidence of the incapacity of the defendant to make a valid contract. Most of these cases relate to contracts entered into before office found, but within a time during which the inquisition finds the person to have been a lunatic. I have found no case which did not hold that the finding was *prima facie* evidence of the defendant's lack of mental capacity to make a valid contract.

None of these cases arose under a probate system like our own. In *Motley* v. *Head,* the court do not even give the adjudication the effect of *prima facie* evidence, otherwise the burden of proving mental capacity would be cast upon the plaintiff and not upon the defendant as stated in that case. In that case a guardian was appointed over the defendant by a court in Massachusetts, while he was temporarily there for treatment in an inebriate asylum. At the time of the adjudication and appointment of guardian in Massachusetts, Head was a citizen of this state, having his domicile and home, and that of his wife and family here, and it was stated in the application for the appointment of a guardian, that he was a resident of Windsor, in this state. Motley sought to recover for services and money which he rendered and furnished in this state, in and about the business of the defendant, by the procurement of Head's wife, who was his agent for that purpose during the time he was in Massachusetts. The case does not show that Head had any property in Massachusetts, or that by the statutes of that state the Probate Court there had jurisdiction to appoint a guardian in such a case. It might well be questioned whether on the facts disclosed, the adjudication of that Probate Court would have any effect anywhere. If this decision is sound law, it practically prevents or destroys the beneficial results intended by such an appointment over persons of the classes named. Suppose a guardian is appointed over a spendthrift who is adjudged to be such by reasons of excessive drinking, and the ward falls into the hands of some knave who overreaches him by a sharp bargain, and then sues him to recover damages for his failure to fulfill it.

Under the doctrine laid down in *Motley* v. *Head,* in order to have the adjudication and appointment of a guardian afford him any protection, the ward must show affirmatively that at the time of the alleged contract, his mental condition resulting from excessive drinking, was such as to render him legally incompetent to enter into a valid contract. *Leonard* v. *Leonard, supra,*

was an action to recover the amount of a promissory note dated May 12, 1830, made by the defendant and payable to the plaintiff or order, June 1, 1830. The plaintiff was regularly put under guardianship by the Probate Court, as a person *non compos mentis.* In May, 1831, the defendant paid the plaintiff the amount of the note and took it up, the same being then in the possession of plaintiff. The defendant offered to prove that the plaintiff was not *non compos mentis,* but that he was before, at the time the guardian was appointed, and since had been of sound mind and capable of managing his own concerns. This evidence was rejected, the court holding that the decree of the Court of Probate was conclusive, and instructed the jury that under these circumstances the delivery of the money to the ward did not amount to a payment of a note. A verdict was found for the plaintiff, and judgment was affirmed by the Supreme Court. In delivering its opinion, the court on the question that the adjudication of the Probate Court is conclusive, say : " If this was not the general principle of the law, the situation of the guardian would be extremely unpleasant, and it would be almost impossible to execute the trust. In every action he might be obliged to go before the jury upon the question of sanity, and one jury might find one way, and another another. We are of the opinion that as to most subjects, the decree of the Probate Court, so long as the guardianship continues, is conclusive evidence of the disability of the ward ; but that it is not conclusive in regard to all. For example, the ward, if in fact of sufficient capacity, may make a will, for this is an act which the guardian cannot do for him. But the transaction now in question falls within the general rule." This exception in regard to a ward's making a will is recognized in *Robinson's Exr.* v. *Robinson,* 39 Vt. 270, and is there put upon the ground that " a person of a lower degree of mental capacity, is to be regarded competent to make a testamentary disposition of his property, than is required to deal with and dispose of it by contracts."

*Blaisdell* v. *Holmes*, 48 Vt. 492, is also cited in the majority opinion. That was an action to recover for services rendered by plaintiff to defendant as his house-keeper. The defendant was a. farmer, an unmarried man, owning a farm on which he lived and' which he carried on during the time covered by the plaintiff's service. Prior to plaintiff's employment by him, the defendant had been adjudged an insane person, and a guardian appointed over him by the Probate Court, and during the entire time she worked for him, he was under such guardianship. During that time the defendant managed his farm and property and household affairs in his own way, without interference on the part of his guardian. The guardian knew that plaintiff was at work for defendant and told her to stay and he would see her paid.

The plaintiff kept house for defendant, did his cooking and so far as appears performed the usual household duties connected with housekeeping. Her term of service extended one year from Nov. 1870. The guardian died June 11, 1873, and prior to the bringing of her suit, and after his death the defendant had no guardian. It would seem from the facts stated that the judgment in favor of the plaintiff, on reason and authority, might have been and should have been put on the ground that plaintiff's services were necessaries furnished under such circumstances as to make defendant liable therefor. The court seem to have decided the case on the ground that practically there was a termination of the guardianship. In delivering the opinion of the court, Redfield, J. says : " The adjudication of the Probate Court that defendant was at the time a proper subject for guardianship, is, no doubt, conclusive. And that condition of the ward is, ordinarily, presumed to continue. But when it affirmatively appears that the ward has recovered from his infirmity and is in the possession of a sound mind, and is conducting business in his own right and name, like other citizens, and the guardian sees him buy and sell, hire and pay,

without notice or interference, we see no good reason or rule of law that should shield him, more than other men, from the common liability to pay his hired help. Judge Redfield says, 3 Law of Wills 458 : in cases of persons of unsound mind, the guardianship will, practically, terminate with the recovery by the ward of his sound mind and disposing capacity." If the decision in that case was put upon tenable ground, it is far from being an authority which supports the decision arrived at by the majority of the court, as the facts in that case bear no resemblance to those in the case at bar. In 3 Redfield on Wills 458 and immediately following the quotation made by the court as above, it is said : "But it is regarded, in practice, as the only regular course for the court, on application by any party interested and notice to all others in interest, to declare the guardianship terminated by the occasion for its continuance having ceased. The same rules will apply to cases of guardianship over spendthrifts.". These suggestions are peculiarly pertinent in view of our statue above cited providing for the termination of such guardianship.

I am aware that this whole subject is attended with difficulty and that the decisions bearing upon it are somewhat conflicting ; but in view of the beneficial results intended by the law providing for guardians over this class of persons, and having in mind its ample provisions for the termination of such guardianship, I think that this court has adopted a view of the matter in the two cases cited and in the case at bar which practically nullifies the law.

*I would reverse the judgment and render judgment for the plaintiff to recover $5.50 damages.*