Judgment reversed, and a <em>venire de novo</em> awarded.

# Johnson *against* Lines.

An over-supply of an infant's wants, though the articles might in other respects be ranked as necessaries, gives a demand against him only for so much as was actually needed; and it is the tradesman's duty to acquaint himself with the infant's circumstances and necessities, as well as to take notice of supplies by other tradesmen.

The rule that no one may deal with an infant, is subject to the exception that a stranger may supply him with necessaries; but to bring the contract within it, the burthen of proving the existence of an actual necessity lies on the tradesman, who, in regard to that, acts at his peril.

Though the permission of a guardian, in a doubtful case, may excuse the unfitness of a supply for the infant's degree, yet no permission to deal for what is manifestly improper in quantity or sort, can subject the infant to liability in favour of one who has dealt with him *malà fide;* but the guardian may make himself personally liable by a permission which amounts to an order.

What are necessaries, is a question mixed of fact and law; but where an excessive supply has manifestly been so gross as to shock the senses, the court may declare it to be inordinate in point of law.

ERROR to the Common Pleas of *Washington* county.

Edward L. Lines and William W. Scott, trading under the firm of Lines & Scott, against David Eckert, administrator of John Johnson.

This was an action of *assumpsit*. The declaration contained the common money counts; to which the defendant pleaded that the intestate was an infant at the time of the supposed promises; and the plaintiffs replied that the goods provided were necessaries. The intestate, whose infancy was admitted, contracted a debt with the plaintiffs for goods sold and monies advanced, as appeared by

[Johnson v. Lines.]

their account, between the 9th October 1836, and the 30th January 1838, to the amount of $1063.27. The items consisted in a great measure of fancy articles, which a wasteful boy, uncontrolled by his parents or guardian, would be apt to purchase. The infant had a guardian; but it did not appear that he exercised any care or control over him, or that he had been consulted in relation to his dealings.

The defendant asked the court to charge " that the plaintiffs had no right to deal with the minor even for necessaries, unless the guardian refused to furnish him with them." The court charged " that the plaintiffs had no right to deal with the deceased unless by the *permission*, express or implied, of the guardian; *or* unless the guardian refused to furnish necessaries to his ward." The defendant also prayed direction, " that if the plaintiffs were justified in dealing with him, their bill is so exorbitant that the plaintiffs themselves could not have considered them necessaries, and therefore are not entitled to recover:" to which the court responded, that " what are necessaries is a question of fact mixed with law. It is to be decided by the jury under the direction of the court, and depends on the estate, circumstances and pursuits of the man. The jury will probably think this bill extravagant, and that the plaintiffs could not have supposed many of these items necessary. Some of them, they must have known, were *not* necessary. The plaintiffs cannot recover for what are not necessaries." The defendant excepted. Verdict and judgment for the plaintiffs.

*Marsh*, for the plaintiff in error, cited 2 *Serg. & Rawle* 44; 2 *Eng. Com. L.* 600.

*M'Kennon*, for the defendants in error, cited 7 *Watts* 344; 3 *Day* 37; 1 *Bibb* 519; 7 *Watts* 237; 8 *T. R.* 578; 1 *Esp. R.* 212; 3 *Eng. C. L.* 33; 5 *Esp. R.* 152; 1 *M. & S.* 737; 3 *Bac. Abr.* 593.

The opinion of the Court was delivered by
GIBSON, C. J.—The case of the plaintiffs below is poor in merits. It appears that they supplied a young spendthrift with goods which they call necessaries, but which ill deserve the name. Their account mounts up to more than a thousand dollars, comprising charges for many articles which might be ranked with necessaries when supplied in reason; but not at the rate of twelve coats, seventeen vests, and twenty-three pantaloons, in the space of fifteen months and twenty-one days; to say nothing of three Bowie knives, sixteen penknives, eight whips, ten whip-lashes, thirty-nine handkerchiefs, and five canes, with kid gloves, fur caps, chip hats, and fancy bag, to match. Such a bill makes one shudder. Yet the jury found for the plaintiffs almost their whole demand, including sums advanced for pocket-money, and to pay for

[Johnson v. Lines.]

keeping the minor's horses, which no one would be so hardy as to call necessaries. How they could reconcile such a verdict to the dictates of conscience, I know not. They surely could not complacently look upon the ruin of their own sons, brought on by ministering to their appetites, and stimulating them with the means of gratification. Every father has a deeper stake in these matters than the public mind is accustomed to suppose; and it intimately concerns the cause of morality and virtue, that the rule of the common law on the subject be strictly enforced. The minor was at the critical time of life when habits are formed which make or mar the man—which fit him for a useful life, or send him to an untimely grave; and public policy demands that they who deal with such a customer, should do so at their peril. This enormous bill was run up at one store; and what other debts were contracted for supplies elsewhere, we know not; but let it not be imagined that the infant's transactions with other dealers did not concern the plaintiffs. "With a view to quantity, and quantity only," said Baron ALDERSON, in *Burghart* v. *Angerstein*, (6 *Car. & P.* 700), "you may look at the bills of the other tradesmen by whom the defendant was also supplied; for if another tradesman had supplied the defendant with ten coats, he would not then want any more, and any further supply would be unnecessary. If a minor is supplied, no matter from what quarter, with necessaries suitable to his estate and degree, a tradesman cannot recover for any other supply made to the minor just after." And the reason for it is a plain one. The rule of law is, that no one may deal with a minor; the exception to it is, that a stranger may supply him with necessaries proper for him, in default of supply by any one else; but his interference with what is properly the guardian's business must rest on an actual necessity, of which he must judge, in a measure, at his peril. In *Ford* v. *Fothergill*, (1 *Esp. R.* 211; S. C. *Peake's N. P. C.* 299), Lord KENYON ruled it to be incumbent on the tradesman, before trusting to an appearance of necessity, to inquire whether the minor is provided by his parent or friends. That case may be thought to have been shaken in *Dalton* v. *Gib*, (5 *Bing. N. C.* 198), in which it was held that inquiry is not a condition precedent to recovery where the goods seemed to be necessary from the outward appearance of the infant, though the mother was at hand and might have been questioned; but in *Brayshaw* v. *Eaton*, (*Id.* 231), this was explained to mean that, as such an inquiry is the tradesman's affair, being a prudential measure for his own information, the omission of it is not a ground of nonsuit; but that the question is, on the fact put in issue by the pleadings, whether the supply was actually necessary. It is the tradesman's duty to know, therefore, not only that the supplies are unexceptionable in quantity and sort, but also that they are actually needed. When he assumes the business of the guardian for purposes of present relief, he is bound to execute it as a prudent

[Johnson v. Lines.]

guardian would, and, consequently, to make himself acquainted with the ward's necessities and circumstances. The credit which the negligence of the guardian gives to the ward, ceases as his necessities cease; and, as nothing further is requisite when these are relieved, the exception to the rule is at an end. In this case, the supply of articles which were proper in kind, was excessive in quantity. I impute no intentional wrong to the plaintiffs, for they dealt with the intestate, as others may have done, evidently supposing him to be *sui juris;* but I certainly do blame the jury for finding nearly the whole demand, after it had been conceded that he was an infant.

That the charge, though not palpably wrong in the abstract, tended to mislead in its application to the facts, is visible in the verdict it produced. The defendant went to the court for direction that the plaintiffs could not lawfully deal with the infant, even for necessaries, unless the guardian had refused to furnish them; and had, for response, a direction that " the plaintiffs had no right to deal with the deceased, unless by the *permission,* express or implied, of the guardian; *or* unless the guardian had refused to furnish necessaries for his ward." This very significant addition to the principle assumed in the prayer, was meant to indicate a liberty to deal by permission beyond the bounds of necessaries, or it meant nothing. It indicated that an authority to deal with a minor in a way to charge him personally, emanates from his guardian's permission, which is paramount, or at least equal, to the authority so to deal with him, that emanates from his necessities. The jury would naturally so understand it. And this was predicated in reference to the question before them, whether the ward's estate could be subjected to payment for luxuries. They might readily understand, therefore, that the guardian's permission to run up this bill would charge the ward's estate with it, independently of its propriety. If that was not the drift of the direction, it is not easy to see why anything was said about permission at all.. In a case of doubtful propriety, I can readily understand how the guardian's sanction, or that of a relative, might justify a supply beyond the limits of strict necessity, which a dealer might furnish *bonâ fide* on the credit of the ward; but though the guardian might subject himself to payment of a grossly improvident bill, by a permission amounting to an order, his connivance at an improper supply by a tradesman, would not subject the ward to payment of it. Indeed, it has been said (3 *Wils. Bacon* 595 *in marg.*) to have been several times decided, that where credit has been given to the parent or guardian, the creditor has no recourse to the infant. The guardian is set over the ward for the very purpose of preventing him from making such a bill; and his desertion of his trust would not help the case of one who had dealt with the ward *malâ fide.* As, then, the plaintiffs were bound to know that the guardian abused his trust in allowing the infant to run

[Johnson v. Lines.]

up this bill, they can recover no more of it than was proper to relieve the ward's necessities. This notion that the guardian's permission might legitimate the demand, may have had a misguiding influence on the jury; for a passive acquaintance with the transaction which the law would presume from his duty to have an eye on the doings of the ward, would be a constructive permission; or it might be implied from the fact that he had left the ward to shift for himself.

Again. The defendant prayed direction, " that if the plaintiffs were justifiable in dealing with the ward, the bill is so exorbitant that the plaintiffs themselves could not have considered them (the goods) necessaries; and that they are therefore not entitled to recover :" in answer to which, the court charged that " what are necessaries, is a question of fact mixed with law. It is to be decided by the jury under the direction of the court, and depends on the estate, circumstances and pursuits of the minor. The jury will probably think this bill extravagant, and that the plaintiffs could not have supposed many of the items necessary : some of them, they must have known, were not necessary. The plaintiffs cannot recover for what were not necessaries." Not a word in this, in response to the prayer for direction as to the effect of the plaintiffs' consciousness that the supply was extravagant; though consciousness would affect them with *mala fides,* and deprive them at once of whatever merit they might otherwise pretend to have from the guardian's implied sanction. The Judge said truly, that what are necessaries, is a question mixed of fact and law; but he did not say, as he might and perhaps ought to have done, that an over-supply of goods otherwise proper, ceases to be a supply of necessaries as to the excess. The jury were indeed left to say what were necessaries; but rather as regards the sort than the quantity, in respect to which the effect of excess was overlooked throughout. Had it been properly impressed, the jury could not have found more than a fourth part of the bill. To them doubtless belongs the question of extravagance; but where the supply has been so grossly profuse as to shock the sense, it is the business of the Judge to say so as matter of law, and charge that there can be no recovery for more than was absolutely necessary.

Judgment reversed, and a *venire facias de novo* awarded.