97   202
147  527
97   202
149  166
97   202
164  489
97   202
41SC 2133

## Ruchizky *versus* De Haven.

1. When a person enters into stock-gambling transactions through the medium of a broker, he will be deemed to be dealing with such broker as a principal, not as an agent.

2. Where a minor of limited means embarks in stock transactions to a large amount by way of margins, the court will, even in the absence of direct evidence that he did not intend to receive or deliver the stock bought or sold on his behalf, infer that such was not his intent, and will therefore stamp the contract as a wagering contract merely, contrary to the policy of the law, and void *ab initio*.

3. When the whole amount deposited by the minor as margins is lost in such transactions, he is at liberty to recover back at any time, from the brokers employed by him, the amount so deposited.

4. Per GORDON, J. The doctrine that where an infant has executed a contract and has enjoyed the benefit of it, and afterwards, on coming of age, seeks to avoid it, he must first restore the consideration which he has received, that he cannot have the benefit of the one side without restoring the equivalent on the other, may and certainly does apply in certain cases, but as a general rule is unsound. It certainly has no application to the present case.

February 11th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county*: Of July Term 1879, No. 23.

Assumpsit, by Joseph Ruchizky, a minor, by his father and next friend Joseph Ruchizky, against Alexander H. De Haven, Hugh De Haven, S. L. De Haven, and Henry L. Townsend, trading as De Haven & Townsend. The plaintiff afterwards died intestate, and by suggestion, filed of record, his administrator Conrad Anwalter was substituted in his place.

The following case stated was by agreement submitted to the court;

"And now, September 13th 1878, it is hereby agreed by and between the parties to the above suit, that the following case be stated for the opinion of the court in the nature of a special verdict. That Joseph Ruchizky, the plaintiff decedent, at the time of bringing this suit, was an infant under twenty-one years of age, and only obtained his majority on August 12th 1877. That the defendants are and were since January 1st 1875, and before that, stockbrokers,

[Ruchizky v. De Haven.]

having their place of business on Third street, Philadelphia; that the plaintiff decedent was on January 1st 1875, and before that, a clerk in the banking-house of the Northern Saving Fund, in Philadelphia, and so continued until September of 1876; that in January 1875, he began dealing in corporation-stocks on margins through the defendants, who acted as his brokers, not knowing him to be an infant; that these transactions continued from time to time until some time in August 1876; that the value of stocks purchased by the defendants for the decedent on his order during this time, at the price paid for the same, was $472,419.55.

"That the plaintiff decedent, while these transactions were being carried on, transferred certain corporate stocks to the defendants, and paid to them certain sums of money, all to be held and used by defendants as collateral security to them against loss by or on account of purchases or sales made by them for him as follows:

1875.
Jan.  22, 40 shares Philadelphia & Erie R. R. Co.    .  $759.37
 "    "  14  "      Philadelphia & Reading R. R. Co.      785.75
 "    25, Cash  .    .    .    .    .    .    .    .     43.25
May    7, 100 shares Oil Creek & Alleg'y V. R. R. Co. 1,175.00
 "    14,  20  "     Keystone National Bank       .    .  900.00
July  12, Cash  .    .    .    .    .    .    .    .    300.00
Aug.   4,  "  .    .    .    .    .    .    .    .    .   90.00
Nov.   2,  "    .    .    .    .    .    .    .    .    175.19
Dec.  30,  "    .    .    .    .    .    .    .    .    400.00

1876.
Jan.  19, Cash  .    .    .    .    .    .  .    .    .  500.00
 "    "   "    .    .    .    .    .    .    .    .    .   60.00
Feb.   7,  "    .    .    .    .    .    .    .    .    500.00
 "     8,  "    .    .    .    .    .    .    .    .    283.00
April  1,  "    .    .    .    .    .    .    .    .    300.00
 "     5,  "    .    .    .    .    .    .    .    .    100.00
40 Shares Northern Saving Fund, S. D. & T. Co.    .   700.00
Aug.   5,  "    .    .    .    .    .    .    .    .     30.40
May    2,  "    .    .    .    .    .    .    .    .    300.00
 "    16,  "    .    .    .    .    .    .    .    .    130.00
 "    22,  "    .    .    .    .    .    .    .    .    200.00
June  12,  "    .    .    .    .    .    .    .    .    100.00
 "    19,  "    .    .    .    .    .    .    .    .    100.00
 "    26,  "    .    .    .    .    .    .    .    .    100.00

"The net proceeds of the sale of the said forty shares stock of the Northern Saving Fund Company was $593.00.

[Ruchizky *v.* De Haven.]

" The full amount thus paid and transferred to the defendants by the decedent, estimating the stocks as cash, at the prices at which they were sold by the defendants, is $7024.96, in addition to that they took twenty shares Keystone Bank in the final settlement at $900; but it would not bring that amount then, or any time since, and has not been sold.

" That the defendants from time to time repaid to the plaintiff various sums of money amounting to $2695.92.

" That these transactions, taking them as a whole, resulted in a heavy loss to the plaintiff decedent, and on the second day of August 1876, the defendants sold the last of the stocks held by them for plaintiff decedent, and closed the account, which showed an indebtedness from said decedent to defendants.

" That, except the sum of $2695.92, repaid to plaintiff decedent by defendants, as aforesaid, he never received anything from defendants on account of said transactions, and none of the stock purchased by defendants on his order was ever actually delivered to him, except on January 3d 1876.   Five shares of Pennsylvania Railroad Company stock were transferred to J. A. Landis, and cost of same charged to plaintiff decedent; but all other stocks were retained by defendants as security for the purchase-money paid therefor, and all of the said stocks were sold by the order of said decedent during on or before August 1876.

" The decedent was a clerk at a salary of $500 a year, and had no estate or property except that, at the commencement of his operations with defendants he left, as collateral security for his transactions forty shares of the Philadelphia and Erie Railroad, standing in his name, of the value of $759.37, and fourteen (14) shares of the capital stock of the Philadelphia and Reading Railroad Co., standing in his name, of the value of $785.75; that said stock was sold by defendants and the proceeds lost in the aforesaid transactions, and at the time this suit was brought the decedent had no means out of which he could repay to defendants the money which they had paid him from time to time, nor did he acquire any means until the day of his death.

" The twenty shares Keystone Bank that decedent left as collateral was in his own name.   The one hundred shares Oil Creek Railroad and the forty shares Northern Saving Fund, Safe Deposit and Trust Company were both in the name of P. K. Landis.

" On May 2d 1876, an account was opened in the name of decedent, in trust for P. K. Landis, and all the transactions in this account were entered by defendants in above name with the knowledge and consent of decedent, and at the close of their transactions the decedent acknowledged in writing his indebtedness jointly with P. K. Landis to the defendants in the sum of $655.29. A copy of this paper is as follows:

[Ruchizky *v.* De Haven.]

"Philadelphia, August 4th 1876.

"I have paid De Haven & Townsend twenty-eight $\frac{47}{100}$ dollars that, with the forty shares Northern Saving Fund, Safe Deposit and Trust Company at ($17.50), $17$\frac{50}{100}$ dollars per share, and twenty shares Keystone National Bank, at forty-five dollars ($45) per share, is in settlement of my individual indebtedness to De Haven & Townsend, and I do hereby acknowledge my joint individual liability with P. K. Landis for the balance of $655$\frac{29}{100}$.

(Signed,)                              "JOSEPH RUCHIZKY.

"That for the purposes of this case it is admitted that the fact that this account of the decedent was opened in trust for P. K. Landis, was unknown to the said Landis at the time it was opened, and while business was being carried on under it and until some time after the day of the date of the above-recited writing. That the account was so opened without any direction from the said Landis and without any consideration therefor moving from the said Landis or any one on his behalf, and he does not, and never did claim any benefit therefrom, or in any way acquiesce in, or accept the benefit of the act of decedent.

"The charge to decedent on August 7th 1876, was for $200 loaned to him on January 7th 1876, and the payment of the same was guaranteed in writing by P. K. Landis; and the check given to said defendants for the same, with the endorsement of P. K. Landis, was given to decedent in the final settlement with him.

"That plaintiff decedent died on or about March 17th 1878, and letters of administration on his estate were issued to Conrad Anwalter on April 1st 1878.

"If the court be of the opinion that, on the above facts, their judgment should be for the plaintiff, then judgment is to be entered for plaintiff for $5229.04, and interest from August 1st 1876, but on the delivery to said plaintiff of twenty shares Keystone National Bank (formerly Keystone Bank), together with all dividends that have or may have been declared on the same between May 14th 1875, and the time when said stock shall be returned, the said judgment is to be reduced to $4329.04, with interest from above date; but if not, then judgment to be entered for the defendants; the costs to follow the judgment, and either party reserving the right to sue out a writ of error thereon."

The following was the opinion of the court below delivered April 19th 1879, by MITCHELL, J.: "The essential facts of this case stated may be briefly summed up to be; that the original plaintiff being an infant, employed defendants, who are stock brokers, to buy and sell stocks for his account; that defendants received from plaintiff considerable sums of money and shares of stock, which they applied to the purchases directed and made sales as directed, the proceeds of which they paid over to plaintiff; that after a large

[Ruchizky *v.* De Haven.]

number of transactions plaintiff ceased giving orders, and the account was closed or liquidated, showing an indebtedness by plaintiff to the defendants. It also showed, however, that during the dealings plaintiff had paid to the defendants some $4300 more than he had received from them, thus making a loss to him of that amount, besides his debt to defendants. This sum he now seeks to recover back from the defendants, on the ground of his infancy and his right to avoid all the transactions referred to.

" The case does not expressly say when the plaintiff elected to disaffirm, but it must be presumed that it was after the liquidation of the account in August 1876, as the suit is not brought until March Term 1877.

" Upon this state of facts the defendants must be regarded as the agents of the plaintiff, dealing for him with the other parties to whom they sold, or from whom they bought stocks in the course of the transaction, but as to whom they assumed liabilities as if they were principals; and the question arises, can defendants now, after having assumed obligations towards others which they have discharged by the payment over of the money or the delivery of the stocks, be held answerable to rescind all these completed transactions as between themselves and plaintiff, and thus bear the loss of his speculations ?

" It is commonly said that an infant cannot appoint an attorney or agent of any kind; indeed that is the one act which it is said is so absolutely void as to be incapable of affirmance. But that is said with reference to the acts of the agent set up as acts of the infant with regard to third persons. It is nowhere said that if an infant use the hand of another to do an act which he might do himself, the act shall not, as between the two, be deemed valid after it has been completely executed. And that is the present case. The defendants as brokers were ordered to buy stocks; they did so. Then they were ordered to sell, and they did so, and accounted to plaintiff for the proceeds. That was their whole duty, and, having performed it, their connection with the transactions ceased; they were mere conduits to pass money from the hands of plaintiff to those of the other principals in his contracts, and to hold them liable to make good his losses now, after the money has by his direction passed out of their hands, would be to establish a principle that would include every one who, however innocently or ministerially, passed the money of an infant towards its destination. Such a principle would be a shocking violation of natural justice, and be a dangerous conversion of the privilege of infancy from a shield to a sword. No case has been found, nor do we believe any exists, which sustains any such view of the law. Perhaps the most terse and pointed statement of the true rule on the privilege of infancy is to be found in the judgment of Lord Justice TURNER, in Ex parte Taylor, 8 De G., M. & G. 254, 'if

[Ruchizky v. De Haven.]

an infant buys an article which is not a necessary, he cannot be compelled to pay for it; but if he does pay for it during his minority, he cannot, on attaining his majority, recover the money back.'

" It appears, however, from the case stated that the defendants have in their hands certain shares of stock of the Keystone National Bank, whose value as between these parties has been liquidated at $900. This, it appears, is stock of plaintiff, put by him in the hands of defendants for certain purposes, but which has not yet left defendant's possession and control. As to this stock, therefore, we think the transaction is not entirely executed, and the plaintiff's privilege of rescission still exists.

" The case stated makes mention of one P. K. Landis, as having certain connections, in name at least, with some of the transactions, but we are unable to see that he has any rights of his own that are involved in this suit, or that the use of his name under the circumstances recited in the case stated in any way varies the rights of the parties thereto. We have, therefore, treated this case throughout as between Ruchizky and De Haven.

" Judgment is entered for the plaintiff on the case stated for $900, with interest from August 1st 1876, with the right on the part of the defendants to pay it by the delivery of twenty shares of the stock of the Keystone National Bank, together with any dividends that may have been received therefrom between May 14th 1875, and the time of delivery."

Plaintiff thereupon took this writ, assigning for error the judgment of the court on the case stated.

*Rudolph M. Shick* and *Benjamin Harris Brewster*, for plaintiff in error.—As regards the contracts on margin the defendants were dealing with the plaintiff as principals and not as agents. The collateral deposited with them was intended for their own indemnity and not for a transfer to others. In any event a court of equity would have decreed return of collaterals so held and refuse a decree authorizing their sale, the pledgor being a minor: Smith *v.* Eisonlord, 2 Phila. 353; Edwards on Bailments (2d ed.) sect. 189. The defendants could not therefore by selling the collaterals better their position and make their contract with the minor other than executory: Vent *v.* Osgood, 19 Pick. 572. Even if this contract be held to be executed, the minor is at liberty to rescind it and recover his property. In the present case the minor received nothing which he could tender to defendants. And the great weight of authority is to the effect that even where a minor has received consideration, in pursuance of an executed contract, he is at liberty to disaffirm the contract and recover his property without tender of the consideration received: Shaw *v.* Boyd, 5 S. & R. 309; Stoolfoos *v.* Jenkins, 12 Id. 399; Corpe *v.* Overton, 10 Bing. 252;

[Ruchizky *v.* De Haven.]

Price *v.* Furman, 27 Vt. 268; Ewell's L. C. Infancy 126; 1 Am. L. C. 320; Urban *v.* Grimes, 2 Grant 96; Williams et al. *v.* Baker, 21 P. F. Smith 476; Lenhart *v.* Ream, 24 Id. 59; Schrader *v.* Decker, 9 Barr 14; Abell *v.* Warren, 4 Vt. 149; Gibson *v.* Soper, 6 Gray 279; Chandler *v.* Simmons, 97 Mass. 508; Walsh *v.* Young, 110 Id. 396; Mustard *v.* Wohlford's Heirs, 15 Gratt. 329. It is eminently proper, in view of the fact that this transaction was a mere gambling contract, and, as such, wholly opposed to public policy, to declare it entirely void, in which event the minor would uudoubtedly be entitled to recover.

*Samuel Dickson*, for defendants in error.—The defendants below were stock brokers, and were employed by the plaintiff to buy and sell stocks for his account. As such contracts are made by brokers in their own names for an undisclosed principal they become liable, both according to the general commercial law and the special rules of the board of brokers, to the parties with whom they contract. It is to secure them against loss upon contracts which they thus make in behalf of their customer that a margin is placed in their hands by way of collateral security; but if the collateral security is made use of, as was the case here, it is in order to make good the contract with the other parties thereto. The brokers do not retain the cash themselves, they pay it over to the other principal or his broker. It was in this way that all of the cash and shares received from the plaintiff were used by the defendants.

Defendants' position as agents is also established by the express terms of the case stated. They "acted as his (plaintiff's) brokers." The purchases and sales in question "were made by them (defendants) for him (plaintiff)." The stock was "purchased by defendants on his (plaintiff's) order." They were mere stakeholders paying over to others wagers in the shape of margins on plaintiff's order. The contract being executed, the minor could not elect to disaffirm it to the prejudice of defendants: Ex parte Taylor, 8 De G., M. & G. 254; 2 Kent's Com. 240; Reeves on Domestic Rel. 244; 1 Pars. on Con. 320, 322; Bartholomew *v.* Fennemore, 17 Barb. 428; Gray *v.* Lessington, 2 Bosw. 257; Strain *v.* Wright, 7 Ga. 568; Locke *v.* Smith, 41 N. H. 346; Bailey *v.* Barnberger, 11 B. Mon. 113; Cummings *v.* Powell. 8 Texas 80; Smith *v.* Evans, 5 Humphrey 70; Weed *v.* Beebe, 21 Vt. 495; Williams *v.* Norris, 2 Littell 157; Hill *v.* Anderson, 5 Sm. & M. 216; Edgerton *v.* Wolf, 6 Grey 453.

The case stated nowhere avers that the contract was a mere gambling one. It appears therefrom that shares were actually bought and sold for and on account of Ruchizky. True, he may not have intended actually to receive and deliver them, but *non constat* that this was the case. In the absence of any statement to the effect that he did not, the court has no right to draw from

[Ruchizky v. De Haven.]

the case stated any such inference: Thayer v. Society of United Brethren, 8 Harris 60 ; Pittsburgh, Fort Wayne & Chicago Railroad Co. v. Evans, 3 P. F. Smith 250; Loew v. Stocker, 11 Id. 347 ; Winchester v. Bennett, 4 Id. 510; Wilde v. Trainor, 9 Id. 439; Ferguson v. Wright, 11 Id. 258; Philadelphia & Reading Railroad Co. v. Waterman, 4 Id. 337; Berks County v. Pile, 6 Harris 493; Diehl v. Ihrie, 3 Whart. 143. A jury alone can say whether a stock transaction amounts to a gambling contract or not: Kirkpatrick v. Bonsall, 22 P. F. Smith 155; Grizewood v. Blane, 11 C. B. 526.

Mr. Justice GORDON delivered the opinion of the court, February 28th 1881.

When, under the case stated, the court below assumed the defendants must be regarded as the agents of Ruchizky in the buying and selling of stocks, in other words, as the mere hand or medium through which he acted in transactions with other parties, it committed an error. An assumption of this kind is in the very face of the statement before us ; the parties were dealing, not in stocks, but margins, and Ruchizky knew no principals but De Haven & Townsend. It was with them and no one else he was dealing, and with them alone he had to account. If any shares were bought, they were bought without the remotest intention of passing them to Ruchizky. The idleness of a supposition such as this is made manifest by the fact that the pretended stock purchases amounted to the sum of $472,419.55, on an advancement of $7024.96 ; nor could the credit of the decedent in this transaction have amounted to anything ; for to start with, he was an infant, and therefore had no credit which could be made available in the money market ; then again, he was but a clerk on a salary of $500 a year, and had no property of any kind, except that which, in the shape of money or stocks, went into the coffers of the defendants. But the case stated itself settles this matter, for by it we are informed that the several advancements made by the decedent were to be " held and used by the defendants as collateral security to them, against loss by or on account of purchases or sales made by them for him."

It is therefore certain that the money paid by Ruchizky was not merely passed by them, for him, to some third party with whom he was dealing, but was retained by them from first to last; first as collateral security, and last as margins, percentage, shaves, &c., which fell to them. Admittedly, then, this was a gambling contract, and, as has been ruled over and over again, twice so late as 8 Norris, in the cases of Fareira v. Gabell and North v. Phillips, transactions in stocks by way of margins, settlement of differences, and payment of the gain and loss, without the intention to deliver the stocks, are mere wagers, and cannot and will not be sustained.

[Ruchizky *v.* De Haven.]

Now, if the parties had been *sui juris*, the contract having been fully executed, we would not interfere to help either party. But such is not the case; for, as we have said, Ruchizky was a minor, and hence was entitled to legal protection and guardianship. It is said they knew not that he was a minor; but what does that matter? He was, nevertheless, an infant, and their want of knowledge did not make him *sui juris*.

The defendants have endeavored to interpose for their protection the doctrine that where an infant has executed a contract, and has enjoyed the benefit of it, and afterwards on coming of age seeks to avoid it, he must first restore the consideration which he received; that he cannot have the benefit of the one side without restoring the equivalent on the other. This rule may, and certainly does, apply in certain cases, but, as a general rule, it is unsound. Its application was refused in Shaw *v.* Boyd, 5 S. & R. 309, and, as was said by Mr. Justice BAYLIES, in Abell *v.* Warren, 4 Vt. 149: "If this be true, then the privilege of infants is not worth possessing." But all this is foreign to the case in hand, for we have here a contract condemned by public policy—a contract that is not merely voidable but void *ab initio*. It follows that nothing can be imposed upon the infant as a condition of rescission; that is a result produced by legal policy, and nothing remains but to restore to the infant that which was unlawfully taken from him.

But more than this. Ruchizky got nothing from the defendants, either in the way of stocks or money; hence there was nothing to be restored; to him it was all loss and no gain; the defendants retained both stocks and money. It is therefore idle to talk about the refunding either by Ruchizky or his estate of that which he never had. His money was paid, not for any species of property, but for a mere chance in the stock lottery. We repeat, therefore, there is nothing to be returned to the defendants; they lost nothing in this transaction, and hence can the more easily return to the plaintiff's estate that which belongs to it.

The judgment is now reversed, and it is ordered that judgment be entered for the plaintiff in the sum of $5229.04, with interest from August 1st 1876, but on return forthwith, as provided in the case stated, to the plaintiff of twenty shares of the Keystone National Bank, said judgment shall be reduced to the sum of $4329.04, with interest as aforesaid, and costs of suit.