## Bradley v. Cool et al.

Matthew K. Stevens and Vincent A. Carroll, for plaintiff.
H. Jerome Jaspan and Morton Witkin, for defendants.

FINLETTER, P. J., and BROWN, JR., J., November 17, 1932.—The bill avers that plaintiff and the defendant Eddie Cool entered into a written contract on January 16, 1931, whereby plaintiff became the manager for Cool for five years, during which time Cool was not to take part in any boxing contests, or other exhibitions, perform or otherwise exercise his talent in any manner or place except as directed by plaintiff, and that in violation thereof Cool agreed in writing with the defendants, Herman Taylor and Robert Gunnis, to engage and enter into a boxing match on September 12, 1932, without having had plaintiff's signature affixed to such written contract. The prayer of the bill is that Cool be enjoined from receiving and converting to his own use such moneys as may be derived by virtue of his contract with Taylor and Gunnis, that the latter be enjoined from paying and delivering any moneys thereunder, and for the appoinment of a receiver of such moneys as may come into the hands of Cool by reason of any boxing match, personal appearance or commercial enterprise.

In his answer Eddie Cool avers that he is a minor, having been born on February 16, 1912; that on August 17, 1932, he notified plaintiff in writing of his disaffirmance, rescission and avoidance of his contract with plaintiff of January 16, 1931; that when he entered into the contract with Taylor and Gunnis his contract with plaintiff had been disaffirmed, rescinded and avoided and that his contract with plaintiff was not for necessaries.

From the admissions in the pleadings and the testimony, we make the following

### Findings of fact

1. Plaintiff was on January 16, 1931, and has since continued to be, a duly licensed and registered fight manager in Pennsylvania, New Jersey and Delaware.

2. Defendant Eddie Cool was on January 16, 1931, and still is, a professional boxer.

3. Plaintiff entered into a written agreement with Cool on January 16, 1931, whereby Cool agreed for a period of five years from January 16, 1931, to render boxing services solely and exclusively for plaintiff. A true and correct copy of this agreement is exhibit "A" of the bill and is incorporated herein by reference thereto.

4. Cool was born on February 16, 1912, and so at the time of execution of the contract between him and plaintiff, he was, and still is, a minor.

5. Plaintiff fully performed all things required to be done by him under the terms of the contract.

6. On August 17, 1932, Cool disaffirmed all obligations and responsibilities resulting from the contract of January 16, 1931.

7. On September 12, 1932, Cool engaged in a boxing contest or exhibition with one Joey Costa in the Convention Hall, Philadelphia, as a result of a contract between him and the defendants, Herman Taylor and Robert Gunnis, entered into on August 31, 1932.

### Discussion

Under the written agreement of January 16, 1931, plaintiff engaged Cool and the latter agreed for a period of five years "to render services solely and exclusively for" plaintiff "in such boxing contests, exhibitions of boxing, training exercises, whenever required by" plaintiff, for which services plaintiff agreed to pay him "66⅔ per cent. of all sums of money derived by" plaintiff "from any services that" Cool "may render hereunder, after the deduction of" training expenses and railroad fares, and guaranteed Cool that "the moneys to be paid to him . . . shall in no year . . . be less than" $1000. On August 17, 1932, Cool disaffirmed or rescinded it.

As Cool was born on February 16, 1912, he was a minor when he signed the agreement and also when he repudiated it, and so the question before us is whether the agreement was such that plaintiff can have specific performance of its provision that Cool would "not during the continuance of this contract take part in any boxing contests or other exhibitions, perform or otherwise exercise his talent in any manner or place except as directed by" plaintiff.

"Now, the law has very wisely protected infants against their liability on contracts, except for necessaries:" Curtin et al. *v.* Patton et al., 11 S. & R. 305, 310. "The rule of law is, that no one may deal with a minor; the exception to it is, that a stranger may supply him with necessaries proper for him, in default of supply by any one else; but his interference with what is properly the guardian's business must rest on an actual necessity, of which he must judge, in a measure, at his peril:" Johnson *v.* Lines, 6 W. & S. 80, 82. "His trading contracts are not an exception to the general rule that, except for necessaries, an infant is not competent to bind himself, nor liable on the contracts he has made:" The Frank Spangler Co. *v.* Haupt, 53 Pa. Superior Ct. 545, 549. "When an infant is sued upon his contract not for necessaries he may defend on the ground of infancy without returning or offering to return the consideration which he received. The law protects infants against their liability on such contracts. Whenever the substantive ground of an action against an infant is contract, as well where the contract is stated as an incident to a supposed tort, as where it is not, the plaintiff cannot recover:" Yubas *v.* Witaskis, 95 Pa. Superior Ct. 296, 300-301. Thus, unless the agreement between plaintiff and Cool was for necessaries, the former cannot compel its performance.

"The infant's contract for personal service is voidable (except in the rare cases when it may be sustained as a contract necessary for his support):" 14 R. C. L. 230. "In some cases contracts for employment have been held binding upon the infant as contracts for necessaries; especially where he received his board and lodging as compensation or part compensation:" 14 R. C. L. 244. But plaintiff did not agree to furnish Cool with any goods nor with board and lodging, which might be regarded as necessaries. He agreed to pay him out of the money derived from his (Cool's) own services as they were rendered. True, plaintiff guaranteed that this would not be less than $1000 a year, but there was no provision for payment at stated intervals. Payments under the agreement would necessarily be made irregularly, as the boxing contests were arranged and performed, and there was no provision for Cool's maintenance meanwhile. Plaintiff's undertaking was not to supply Cool with necessaries. Where "the contract is one of employment of the infant to labor, it is the prevailing rule that the infant may repudiate the special contract, and recover the fair value (quantum meruit) of the services, less any payment that he may have received:" 14 R. C. L. 244. "It is specifically held in numerous cases that an infant may avoid a contract of employment and recover on a *quantum meruit* the value of the services he has rendered:" 1 Williston on Contracts 447.

It seems to us that this is not an agreement by which plaintiff employed the minor, but one in which the minor employed a manager. (Indeed, the latter testified: "I had to get Eddie Cool to make the contract so as I could have a manager's license.") And as such it is, if not void, at least voidable, for "it is well settled that an infant cannot bind himself absolutely by the appointment of an agent:" 31 C. J. 1002. It is not an answer that it is a contract for necessaries. To be sure plaintiff, the agent, got Cool necessaries, i. e., compensation for services. But this is not what is meant by such contracts; they mean where the minor gets wages for his work, not where he pays money for getting work. Plaintiff received only one-third, whereas Cool was entitled to two-thirds of the

amounts received by reason of the latter's services. These were not wages, which are paid at short stated intervals, but depended upon the obtaining of contests which by their nature are not regular. Indeed, in his brief, plaintiff characterizes what he (plaintiff) received under the agreement as *"commissions"*: "It is obvious that the defendant Eddie Cool is attempting to avoid payment of commissions to the plaintiff at this time, although solemnly bound to do so by his contract." Plaintiff thus recognizes that he was *not* employing Cool, but that he was receiving compensation for his employment by Cool as the latter's manager. Cool was not working for him; he was working for Cool.

Furthermore, the agreement has aspects of a partnership arrangement, and as such, Cool, being a minor, had the right to terminate it. "As between himself and his co-partners, an infant's contract of partnership is, like all his other contracts, voidable. He may disaffirm the contract without being liable for damages, and such disaffirmance may be made during infancy:" 1 Williston on Contracts 448. "Partnerships between adults and infants have been made not infrequently; a de facto partnership is thereby created; the infant may withdraw and repudiate his further liability as a partner:" 14 R. C. L. 228. In Elm City Lumber Co. *v.* Haupt, 50 Pa. Superior Ct. 489, 493, a creditor was held to be entitled to a judgment binding the partnership property and that of the partners, who were of age, individually, but as against the minor partner, he "was entitled to a judgment limited to the property of the firm, and not binding him individually."

"Equity will not enforce an infant's contract for personal services by injunction compelling him not to render similar services to others. However, it has been held that an injunction will lie to restrain him from violating an agreement not to compete in business with his employer for a certain number of years after leaving his employ:" 31 C. J. 1088. Cool's agreement was not that he should not compete in business with plaintiff, but that he should not exercise his talent except at plaintiff's direction, and so equity will not restrain him.

Plaintiff relies upon the decision of this court in Harbison *v.* Mawhinney, 8 Dist. R. 697, but we do not think that the same situation existed there as in the instant case. The contract then construed provided for the employment of a minor to serve a milk route, and he was restrained from violating his covenant that "for the space of one year after leaving or being discharged from the service, he would not serve milk . . . to any customer of his employer with whom he became acquainted while so employed." That was a case of competing in business, to which we have adverted above, but here there is no question of competition. Plaintiff is a manager and Cool a boxer. The latter is not taking away any known customers, but merely relieving himself of plaintiff's services in obtaining future engagements. In that case the contract was executed, while the present one is executory, and so voidable by the minor.

Cool's letter to plaintiff of August 17, 1932, was a sufficient avoidance of their agreement. "Any act which clearly shows an intent to disaffirm a contract or sale is sufficient:" 1 Williston on Contracts 453. "Any act showing unequivocally a renunciation of, or a disposition not to abide by, the contract made during minority is sufficient to avoid it. . . . So also a plea of infancy in an action based on the contract is an election to avoid:" 31 C. J. 1068, 1069. "If the infant is himself sued on his contract, a plea of infancy is a sufficient disaffirmance:" 1 Williston on Contracts 454. Thus Cool, by averring his minority in his answer, has clearly repudiated his obligations under the agreement.

Plaintiff asks us to find that after Cool sent his letter rescinding the agreement, he authorized plaintiff to negotiate a boxing match with one Joey Costa. He did not aver this in his bill, but he testified that although he signed the contract for it with Taylor and Gunnis, the fight was carried out under a contract

signed by Cool and not under his (plaintiff's) management. Cool stated that he told Taylor and Gunnis that he would not go through with the fight unless they made a different contract with him as an individual. However, having disaffirmed the written agreement, this alleged authorization would be no more than an oral agreement which Cool could also repudiate, as he did do in fact. Plaintiff's testimony as to what Cool said, when he suggested the Costa fight to him, is not sufficiently clear to sustain a finding of fact that Cool waived his prior avoidance of the written agreement. Then, too, "the time for the ratification of the contract or undertaking of an infant is after his arrival at majority; prior to that time the rule that precludes his binding himself by his contracts also precludes him from binding himself by any subsequent ratification thereof. The ratification during infancy is voidable as well as the contract:" 31 C. J. 1062. Cool could "make no effective ratification until he becomes of age, for an infant's ratification clearly can be no more effectual than his original bargain:" 1 Williston on Contracts 456.

Cool had the right to avoid or disaffirm this agreement when he did, i. e., before attaining his majority: 1 Williston on Contracts 455; 31 C. J. 1067; 14 R. C. L. 235; "regardless of the motive in doing so, and [it] is not affected by the presence of good faith on the part of the other party to the transaction:" 31 C. J. 1066.

The fact that Cool's mother also signed the agreement makes no difference. "Since ordinarily a parent has no right to bind his infant child by contract, the approval of a parent to his infant child's contract does not validate it:" 31 C. J. 1060. "And even though the parent is entitled to his child's services, and the child owes obedience to the parent, the law cannot compel the child to perform a contract of employment made for him or on his behalf by his parent, nor will it attempt to do so indirectly by enjoining the child from working for any one else:" 1 Williston on Contracts 441.

However, as Cool is not sui juris, his mother or some other person should have been appointed guardian ad litem for him. A minor "can only appear by a general guardian or one ad litem: Mitchell v. Spaulding, 206 Pa. 220; Manning v. Baylinson, 68 Pa. Superior Ct. 512; Ohlweiler v. Ohlweiler, 72 Pa. Superior Ct. 518; Kay v. Haupt, 63 Pa. Superior Ct. 16 . . . Swain v. Ins. Co., 54 Pa. 455. . . . That the infant appeared by attorney does not alter the situation: Moore v. M'Ewen, 5 S. & R. 373:" Camera & Radio Shop v. Zalewske, 102 Pa. Superior Ct. 562, 564.

We have, therefore, come to the following

### Conclusions of law

1. The written agreement of January 16, 1931, between the plaintiff, Joseph F. Bradley, and the defendant, Eddie Cool, a minor at the time of its execution, was not for necessaries.

2. The agreement was one of employment and, therefore, voidable by Cool because of his minority.

3. On August 17, 1932, Cool disaffirmed and terminated his obligations under the agreement.

4. Plaintiff is not entitled to any money derived from Cool's services in boxing contests or other exhibitions since August 17, 1932.

5. The bill should be dismissed.

### Decree nisi

And now, November 17, 1932, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the bill be and it is hereby dismissed.

NOTE.—No exceptions were filed to the foregoing decree.