## Niedland et al. v. Kulka

*Randolph W. Childs*, for plaintiffs.

*Robert W. Honeyman* and *Pershing Calabro*, for defendant.

DANNEHOWER, J., May 27, 1948.—By their bill in equity plaintiffs seek to enforce a restrictive employment contract. The suit has been discontinued as to defendant Robinson, according to a stipulation duly filed of record. As to defendant Kulka, suit was started during her minority, and thereafter a guardian was appointed for her. However, at the time of final hearing she had reached her majority, and by consent of all

parties concerned the guardian has been eliminated as a party, and the sole defendant is Marie Kulka.

From the pleadings, evidence, and exhibits, there are made the following

### Findings of fact

1. For a number of years prior to 1946, plaintiff Fred Niedland, under a license agreement with Arthur Murray and Kathryn Murray, trading as Arthur Murray, had operated a dancing school under the name of "Arthur Murray Studios" in the City of Philadelphia, and within a radius of 50 miles thereof.

2. On February 1, 1946, Niedland entered into a written contract of employment with defendant, Marie Kulka, employing the latter for stipulated compensation as a dancing instructor, supervisor, or interviewer for a period of one year, and providing for automatic renewal for additional month to month periods, unless terminated on one month's notice by either party to the other.

3. The contract provided, inter alia, that the employer, Niedland, would give the employe, Kulka, a course of training in dance instruction in accordance with the methods developed by Niedland and by Arthur Murray, and further, after completion of the course of training, Kulka would be given information as to Murray methods, and information as to identity of pupils and patrons of the employer.

4. In addition to other broader limitations, the contract contained an agreement by Kulka that "upon termination of . . . her employment, for any cause, and for a period of two years thereafter, she . . . would not in the . . . City of Philadelphia, or any county . . . within a radius of 25 miles of the employer's studios in the City of Philadelphia, . . . without the written consent of the employer . . . directly or indirectly engage in teaching dancing to any person."

5. The contract further provided that defendant Kulka would never at any time after termination of

employment hold herself out as having been formerly connected with Arthur Murray, or in any way use the name of Arthur Murray.

6. The contract also provided: "The parties hereto, recognizing that irreparable injury will result to the employer in event of a breach of the terms of this contract on the part of the employee, agree that in such event the employer shall be entitled, in addition to any other remedies and damages available, to an injunction to restrain the violation thereof by the employee, and all persons acting for or with him (her)."

7. On October 1, 1946, plaintiff Fred Niedland entered into a partnership agreement with plaintiff Clara B. Niedland to trade as "Arthur Murray Studios", and all rights under the above-mentioned employment contract were transferred to the partnership.

8. Since October 1, 1946, plaintiffs have conducted a dance studio at 1518 Walnut Street, Philadelphia.

9. At the time of execution of the employment contract, defendant Kulka was a minor 19 years of age, having been born on October 23, 1926, although she had represented herself as being 22 years of age.

10. Pursuant to the terms of said contract, defendant was employed by one or both plaintiffs from on or about February 1, 1946, to on or about March 1, 1947, at which time her employment was terminated.

11. On or about March 10, 1947, defendant, Marie Kulka, and Thomas J. Robinson, acting in concert and trading under the name Rob-Marie Studio, opened and commenced to operate a studio, school, or establishment for the teaching of dancing in the Liberty Building, Jenkintown, Montgomery County, Pa., a location within 25 miles of plaintiffs' studio.

12. Defendants acting in concert and trading as aforesaid are engaged in teaching dancing to members of the public.

13. Defendant, Marie Kulka, has not solicited, nor is she soliciting business from the pupils and patrons of plaintiffs or persons who have been pupils and

patrons of plaintiffs and persons whose names have been furnished to defendant by plaintiffs, and she is not holding herself out as having been formerly connected with Arthur Murray and an Arthur Murray dancing school, and she is not using the name of Arthur Murray.

14. In furthering the "Arthur Murray" system of dance instruction, both the Murrays and plaintiffs have expended considerable sums of money in development of methods of dance instruction, obtaining pupils, holding conventions and conferences for licensees to disseminate new methods and principles, and generally to promote the instruction of dancing for profit.

15. Since the institution of this suit in equity, defendant has attempted to disaffirm her contract because of her minority at the time of execution and because the contract is unreasonably in restraint of trade.

The questions involved in this case are treated in the following

### Discussion

The questions of fact are few. Practically the only legal questions, as indicated by finding of fact no. 15, are: (1) Whether under the circumstances proved, defendant may avoid the consequences of her contract because of her minority at the time of execution, and (2) whether the terms of the contract which are sought to be enforced are so unreasonable that a court of equity will not lend its aid in requiring compliance therewith.

As to the first question, there is a dearth of authority. In Harshbarger Dairy v. Hoover, 13 D. & C. 701 (1929), it was held that a minor could not be bound by such a contract. While there is no exhaustive review of authorities, it was the opinion of the Blair County court that a minor would not be held liable on any contract except one for necessaries, in accordance with the strict common-law rule. However, in a quite similar case in Philadelphia, Harbison v. Mawhinney,

8 Dist. R. 697 (1899), the learned Judge Audenried held that where a contract is of benefit or advantage to a minor, there is an exception to the general rule of voidability, and granted an injunction against the minor who violated the terms of his contract.

In our own county, Judge Knight recognized the problem, but was not called upon to decide it, in Levengood Dairies, Inc., v. Ford, 51 Montg. 5 (1934), because there was sufficient evidence from which it could be found that the contract had been ratified after the defendant attained his majority.

Counsel for defendant has questioned the wisdom and soundness of the decision in Harbison v. Mawhinney, supra, as possibly setting a dangerous precedent, on the theory that to permit further exceptions to the general rule of voidability of minors' contracts may tend to strip from those minors the "protective cloak" which the law has always thrown about them. Nevertheless, the law should not allow a so-called "protective cloak" to be used by a minor as an instrument for deliberately evading the dictates of common sense, good conscience, and a sense of justice. Where a contract is without taint of fraud or overreaching, and is for the benefit of a minor, the minor should not be permitted to disaffirm where such action would result in injustice and damage to the other contracting party.

After examining all the evidence, it is clear that this contract was, while generally furthering plaintiffs' purposes, of material benefit and advantage to defendant. She received compensation at a higher rate than she had previously received, and in a field in which she had never before been engaged. To permit her continued violation of the contract would be to cause damage and injustice to plaintiffs, and in addition would amount to a tacit invitation to other minors to engage in similar improprieties.

The contract, insofar as the provisions here sought to be enforced are concerned, is reasonable. This does

not require extended discussion. The territorial restriction of 25 miles from plaintiffs' Philadelphia studio is not excessively restrictive, nor is the time limitation of two years following termination of the employment. The interests of justice and fair dealing require the granting of relief. The chancellor has therefore drawn the following

### Conclusions of law

1. Equity has jurisdiction.

2. The contract of employment entered into by defendant on February 1, 1946, was valid and binding upon her, notwithstanding her minority at that time, because the contract was for her benefit and advantage.

3. The restrictive covenants, insofar as they are sought to be enforced in this case, are supported by consideration, and are not so unreasonably in restraint of trade as to deny plaintiffs injunctive relief.

4. Defendant is violating said restrictive covenants by operating a studio for dancing instruction in the Borough of Jenkintown.

5. Plaintiffs are entitled to relief.

6. The costs should be paid by defendant.

And now, May 27, 1948, in view of the foregoing findings of fact, discussion, and conclusions of law, it is ordered, adjudged, and decreed that the prothonotary shall enter the following

### Decree nisi

1. An injunction shall issue, restraining defendant, Marie Kulka, from conducting a studio or other establishment for the teaching of dancing, and from engaging, directly or indirectly, in the teaching of dancing within a radius of 25 miles from plaintiffs' studio in the City of Philadelphia for the period ending March 1, 1949.

2. Defendant shall pay the costs.

The prothonotary is further ordered and directed to give counsel in the case notice as required by the

rules of equity practice, that unless exceptions are filed within 10 days after the giving of such notice, the decree nisi entered above will become the final decree as of course.