Pankas *v.* Bell, Appellant.

Argued November 22, 1963.   Before BELL, C. J.,
MUSMANNO, JONES, COHEN, O'BRIEN and ROBERTS, JJ.

*Stephen A. Zappala*, with him *Zappala & Zappala*, for appellant.

*George Shorall*, with him *Royston, Robb, Leonard, Edgecombe & Miller*, for appellee.

OPINION BY MR. JUSTICE JONES, March 17, 1964:

On March 2, 1962, Thomas Bell (Bell), then aged 20 years, 7 months,[1] entered into a written employment contract with Sam Pankas (Pankas), a beauty parlor operator. Bell admits having read the contract at the time of its execution and that he understood the contract would bind him to work exclusively for Pankas.

The contract provided that Pankas would employ Bell for a period of two years, commencing March 1, 1962, as a beautician; that Bell would "devote 100% of his business time to the efforts and advancement of the owner's business"; that, if Bell should leave Pankas' employment, he would not "engage either directly or indirectly as an owner, employer or agent in the beauty or hair-styling business within a radius of ten (10) miles from downtown Pittsburgh, Pennsylvania, for a period of two (2) years". The contract also provided that Pankas could terminate the agreement by giving two weeks' notice to Bell "for any cause that may prove detrimental to the business".

---

[1] Bell attained his majority on October 3, 1962.

Bell first became acquainted with Pankas in October, 1960, when he talked briefly with Pankas at a hairdressing exhibition given by Pankas at the Hilton Hotel. Having attended a professional hairdressing school in Washington, Pa., Bell secured a beautician's license and, thereafter, worked for Pankas until May, 1961, in a nonprofessional capacity. Bell then worked for the Towne Modeling Agency for eight or nine months before returning to Pankas' employment and executing the contract referred to.

In September, 1963, Bell and another Pankas' employee became partners in a newly opened beauty salon situated within three blocks of Pankas' salon and advertised themselves as former employees of the Pankas establishment. Bell admits that, while still in Pankas' employment, he gave his card for the new establishment to at least one customer.

The instant action in equity in the Court of Common Pleas of Allegheny County, seeking an injunction, was then instituted by Pankas and, after hearing, a preliminary injunction[2] was granted. This appeal followed.

"In reviewing the grant or denial of a preliminary injunction our familiar rule is to examine the record only to determine 'if there were any *apparently reasonable grounds*[3] for the action of the court below, and we will not further consider the merits of the case or pass upon the reasons for or against such action, unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable' [citing cases]": *Alabama B. & C. Corp. v.*

---

[2] The court enjoined Bell from operating, directly or indirectly, the beauty parlor business until September 1, 1965, from using Pankas' customers lists and from violating the restrictive covenants in the contract.

[3] Emphasis by the Court.

*Penna. Industrial Chemical Corp.*, 410 Pa. 214, 215, 189 A. 2d 180.

Bell initially contends that, since it is admitted by Pankas that Bell had worked under an oral contract from February 1, 1962, to the date of the contract, there was, therefore, no consideration for the restrictive covenant. Our examination of the record reveals no such admission. On the contrary, Pankas testified, and his records indicated, that Bell commenced his latest employment with Pankas on March 5, 1962, and that the contract discussions had lasted about a week before Bell commenced work. The court below obviously believed Pankas and, in light of Bell's confused testimony as to what happened at that period, we see every reason why the court should credit Pankas on this point. We agree with the court below that the contract was not invalid for want of good and sufficient consideration.[4]

As to the reasonableness of the restrictive covenants, factually, the instant case is quite apposite to *Seligman & Latz of Pittsburgh v. Vernillo*, 382 Pa. 161, 114 A. 2d 672, where this Court affirmed the grant of a preliminary injunction enjoining former employees of a beauty salon from operating a salon in competition with their former employer and from soliciting the former employee's customers in violation of restrictive covenants in their employment contracts. While in *Seligman*, the restrictive covenants were more liberal as to time and area (one year and one mile radius) yet the restrictions as to area and time in the instant case are

---

[4] It should be noted that this contract was under seal. In *Killeen's Estate*, 310 Pa. 182, 187, 165 A. 34, this Court said: "In Pennsylvania a seal is more than mere presumptive evidence of consideration. It imports consideration". See also: *Brereton Estate*, 388 Pa. 206, 210, 130 A. 2d 453; Shuchman, Pennsylvania Judgment Notes (1961), §30.2, pp. 105, 106. Cf. 35 Temple L.Q. 125, 134, 135.

well within restrictions we found reasonable in *Seligman*. Bell further contends that, since he was a minor at the time of execution of this contract, the covenant restricting competition contained in the contract is necessarily voidable. Of course, it is hornbook law that, generally, save as to necessaries, the contract of a minor is voidable (*O'Leary Estate*, 352 Pa. 254, 256, 42 A. 2d 624).[5] However, it is equally true that, even though a minor be not obligated to perform his contractual promises generally, to the extent that restoration is possible the minor should be required to return any benefit which he has received under the contract: *Gen. Pulaski B. & L. Assn. v. Provident Trust Co.*, 338 Pa. 198, 202, 12 A. 2d 336; Restatement, Restitution, §139, comment a, p. 559.[6] Our inquiry must be whether Bell, who, allegedly, received "the benefits of [Pankas'] experience and professional competence" and instruction in the use of Pankas' "methods of styling and techniques" and, allegedly, secured Pankas' customers lists, should be required to refrain from entering into competition with Pankas within a reasonable restricted area and for a reasonable length of time.

It would appear that this issue is one of first impression in our appellate courts. On four occasions, common pleas courts in this Commonwealth have been presented with somewhat similar issues: *Harbison v. Mawhinney*, 8 Dist. Rep. 697, *Harshbarger Dairy v. Hoover*, 13 Pa. D. & C. 701, *Bradley v. Cool*, 18 Pa. D. & C. 404, *Niedland v. Kulka*, 64 Pa. D. & C. 418.

---

[5] It was neither contended nor proved that, after reaching his majority, Bell had affirmed this contract.

[6] The law does not compel the other contracting party to be "made whole" nor impel the restoration of the actual status quo existing at the time the contract was executed: *Musser v. Schock*, 95 Pa. Superior Ct. 406, 409.

In *Harbison,* the court held that a minor could be enjoined from breaching his covenant not to serve milk to his former employer's customers within a year after his discharge from service. The court, relying, in large part, on *Fellows v. Wood,* 59 L.T.R. 513 (Q.B.) and *Evans v. Ware,* 3 Ch. 502, 67 L.T.R. 285, said: "But [other minors' contracts] have been recognized by the courts and held binding on the ground that they are clearly beneficial to the infant. Among these are his contracts of service. The test of validity is, 'Is the contract as a whole beneficial to the infant?' If so, it will be enforced. If not, he may avoid it." (698) In *Bradley,* the court refused to enjoin a professional boxer, who was a minor, from boxing under the auspices of persons other than a person with whom he had contracted as his manager. The court held that, while equity can restrain a minor from violating a contract not to compete in business with his employer for a certain number of years after leaving the employment, yet, if there is no element of competition involved, equity will not enforce a minor's contract for personal services by an injunction compelling him not to render similar services for others. In *Harshbarger Dairy,* the court, relying on *Ruchizky v. De Haven,* 97 Pa. 202, and *Shaw v. Boyd,*[7] 5 S. & R. 309, stated that, while infants are liable on their contracts for necessaries, there are "numerous decisions . . . that minors are not liable *on any other form of contract.*" (Emphasis supplied). In *Niedland,* the rule in *Harbison* was approved and applied. Although it was pointed out to the court that *Harbison* constituted a dangerous precedent in that it tended to strip from minors the "protective cloak" which the law has always thrown about them, the court stated: ". . . the law should not allow a so-called 'protective cloak' to be used by a minor as an in-

---

[7] In our view, neither case is authority for the proposition cited.

500

strument for deliberately evading the dictates of common sense, good conscience, and a sense of justice. Where a contract is without taint of fraud or over-reaching, and is for the benefit of a minor, the minor should not be permitted to disaffirm where such action would result in injustice and damage to the other contracting party." (422)

. Other jurisdictions have upheld contracts for a minor's services. In *Spicer v. Earl*, 41 Mich. 191, 1 N.W. 923, Judge COOLEY held that a minor was bound by his executed contract of service if it was reasonable under all the circumstances or not so unreasonable as to be evidence of fraud or undue advantage. In *Robinson v. Van Vleet*, 91 Ark. 262, 121 S.W. 288, the court said: "Should the law recognize the right of repudiation in such cases [minors' contracts for services], . . . . the minor, though able and willing to earn his support, would often be deprived of the opportunity, and driven perhaps to vagrancy and crime."

The court in *Mutual Milk & Cream Co. v. Prigge*, 112 N.Y. App. Div. 652, 98 N.Y.S. 458, adopted a sensible, logical and practical approach to a situation somewhat similar to the case at bar. Therein, a 19 year old minor had entered the employ of the plaintiff as the driver of a milk delivery wagon and had signed a contract agreeing, inter alia, not to solicit business from plaintiff's customers or deliver dairy products to them within three years after leaving plaintiff's employ; the contract was terminable by either party upon one week's notice; several months later the minor quit and entered the employment of a rival milk dealer and solicited business from the plaintiff's customers. In upholding the issuance of an injunction against the minor who had pleaded infancy to avoid the contract, the court stated: "Although he had not arrived at the age at which all contracts with him would be binding, he was of sufficient age to appreciate the nature of this

contract, and to know whether or not it was for his benefit." (458) The court considered that the issue was not one of the liability of a minor for a breach of his contract but whether a minor should be thereunder permitted to repudiate his contract without restoring what he had received and, if restoration cannot be made, without being enjoined from making use of the information he had gained from his employment by the plaintiff to the latter's damage. The court held that the minor should be enjoined "from making use of that information, in violation of his agreement made at the time when he desired and obtained employment, and upon the faith of which he obtained the information and acquaintance" (459), and the court further observed: "No man would engage the services of an infant if he could not impose the same condition for his own protection against the use of his formulas, trade secrets, and lists of customers that he could exact of an adult."

In the case at bar, we need not nor do we decide that a contract for the employment of a minor is an exception to the general rule that the contracts of minors are voidable. What we do determine is that, although this contract is voidable, the minor should not be permitted to utilize any benefits, training or knowledge derived from such contract to the damage and detriment of his former employer. As a practical matter, to hold otherwise would deter the employment of minors because no person would care to run the risk of employing a person who could not only avoid the contract but also utilize that which he has derived from the contract to compete with his former employer.

Behind the rule rendering voidable the contracts of a minor is the very laudable purpose of the law to protect minors from contracts which may be disadvantageous to them and to protect them "against their own lack of discretion and against the snares of designing persons" (*O'Leary Estate,* supra, 256). This

502

"protective cloak" is to safeguard the interests of the minor; it is not to be employed as a vehicle whereby the minor is enabled to practice unconscionable business methods. It is a shield for defense, not a sword for offense. In enjoining this minor from using, to his own benefit and to the detriment of his former employer, that which he has gained from his former employment, we declare, that, even though the contract is voidable, the minor is prohibited from exploiting that which he gained from the contract and that equity should restrain such exploitation.

There is no evidence of any fraud or overreaching on Pankas' part, the contract as a whole was beneficial to Bell and Bell should be enjoined from exploiting that which he gained from his employment by Pankas. The argument that Pankas has suffered no irreparable injury is refuted by the instant record.

From our examination of this record, we are satisfied that reasonable grounds do appear on this record to justify the grant of the preliminary injunction by the court below.

Decree affirmed. Costs on Bell.

Mr. Justice COHEN concurs in the result.

Mr. Justice MUSMANNO and Mr. Justice ROBERTS dissent.